## LATSON v. ST. LOUIS TRANSIT COMPANY, Appellant.

Division One, December 21, 1905.

1. **NEGLIGENCE: Vehicle on Track.** A vehicle has a right to drive on a street car track, where there is no car nearer than 469 feet, and the driveway along the track is occupied by other vehicles.

2. **———: ———: Rear-End Collision: Contributory Negligence.** Plaintiff and her friend, riding in a stanhope, entered upon the street car track of defendant, because another vehicle occupied the driveway between the track and curbstone on their side of the track. At that time no car was coming in their rear nearer than 469 feet. The stanhope kept the track for 82 feet before the collision. It did not turn off of the track onto the driveway, because, first, sufficient time had to elapse to permit a vehicle going in the opposite direction on the driveway to pass, and, second, because another vehicle was coming on the track facing theirs so close to the one on the driveway that they could not turn off, and, third, because when the other vehicle on the track turned onto the driveway its wheels caught or slipped on the car rails and necessitated the driver of plaintiff's vehicle momentarily checking the horse. Immediately after that vehicle was out of the way, the driver of the stanhope commenced to pull off from the track, and had succeeded in getting it entirely off of the track except the hind wheel when the car struck it, throwing plaintiff out and injuring her. There was nothing to obstruct the motorman's view, and he could have seen the vehicle 500 feet away. *Held*, that if his testimony is true that he did not see it until within forty feet of it, he was negligent in not discovering it sooner. *Held*, second, if his testimony is true that the car was running only 6 or 7 miles an hour, he was guilty of negligence in not stopping the car within that distance, even though his testimony is true that plaintiff's vehicle suddenly turned upon the track when his car was forty feet distant. *Held*, third, that if the facts were as shown by plaintiff's testi-

192 sup—29

mony, the motorman could have seen the vehicle 500 feet away, and his negligence was the proximate cause of the injury. *Held*, fourth, that neither the plaintiff nor the driver was guilty of contributory negligence, whether the facts were as plaintiff's testimony shows, or as the motorman testified, that the stanhope, when the car was forty feet away, suddenly turned onto the track, for even then by the exercise of ordinary care he could have avoided the accident by stopping the car.

3. ———: **Common Law Care: Vigilant Watch and Speed Ordinance.** Where the action is based on a violation of the vigilant watch ordinance and speed ordinance, the defendant cannot complain because plaintiff's instructions simply required the motorman to exercise common law care.

4. ———: **Speed of Car.** No expert testimony is needed to show that a street car running six or seven miles an hour on a straight level track can be stopped within forty feet.

5. **INSTRUCTION: Modification.** An appellant cannot complain at the modification of an instruction which was predicated upon a condition that was not pleaded and which was wholly inconsistent with the special defenses interposed by it, and which should never have been given.

6. **NEGLIGENCE: Seeing Vehicle on Track.** A motorman in charge of a street car, seeing a vehicle on the track ahead of him, cannot proceed without checking the speed of his car, on the assumption that the driver of the vehicle will get off of the track in time to avoid a collision, even though he might see that the driver was not attempting to so do.

7. ———: **Concurring Negligence.** Where there was no negligence on the part of the plaintiff, the court should refuse an instruction on concurring negligence.

8. ———: **Refusing Instruction: No Basis in Evidence.** The court cannot be convicted of error in refusing to put to the jury a theory of the case which would cut off plaintiff's recovery, which rests only upon testimony that is contrary to the physical facts and the common knowledge of men. So that the court did not err in refusing to instruct the jury that plaintiff could not recover if the vehicle in which plaintiff was riding was suddenly turned upon the track in front of the car, and the motorman as soon as he saw it used all the appliances at hand to stop the car, but was unable thereby to avoid the collision, if the physical facts and all the testimony show that the car at that time was at least 40 or 82 feet distant.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

Boyle, Priest & Lehmann, J. W. Jamison, John T. Gose, George W. Easley and Edward T. Miller for appellant.

(1) Defendant's answer set up contributory negligence of plaintiff and it was error to give an instruction excluding this defense. Foster v. Guggemos, 98 Mo. 391; Holiday-Klotz v. Tie Co., 87 Mo. App. 167; Schmidt v. Railroad, 149 Mo. 269; Cameron v. Hart, 57 Mo. App. 142; Standfield v. Loan Assn., 53 Mo. App. 595. (2) In plaintiff's petition there is no allegation that after defendant's motorman saw plaintiff's position of peril he failed to stop the car when he could have done so by the exercise of ordinary care, nor is there any allegation of intent to injure or willfulness or wantonness on the part of the defendant. This issue not being raised by the pleadings directly or indirectly, should not have been submitted in this instruction. Holwerson v. Railroad, 157 Mo. 216; De Donato v. Morrison, 160 Mo. 581; Wolf v. Lodge, 160 Mo. 675; Kenney v. Railroad, 70 Mo. 255; Storms v. White, 23 Mo. App. 31; Melvin v. Railroad, 89 Mo. 106; Scott v. Allendaugh, 50 Mo. App. 130; Sedalia Gas Light Co. v. Mercer, 48 Mo. App. 644. (3) There is not a word of evidence to show that after defendant's motorman saw the car he could, either by the use of ordinary or extraordinary care, have stopped the same in time to have prevented the collision. It is error to instruct a jury on a matter as to which there is no evidence. Brayhill v. Norton, 74 S. W. 1024; Center Creek, etc., v. Frankenstein, 78 S. W. 785; Kimball v. Railroad, 87 S. W. 1099; Chambers v. Railroad, 86 S. W. 501; Stephens v. Metzger, 95 Mo. App. 610. (4) We are unable to even guess at the reason for the refusal of instruction 5 unless we assume that the court refused to permit the jury to consider defendant's evidence at all. Defendant intro-

duced evidence to show that the vehicle was turned up-on the track suddenly in front of defendant's car, and that immediately upon observing that plaintiff was coming upon the track, the motorman attempted to stop the car but was unable to do so. There was evidence to support this instruction and it is based upon the law. Watson v. Railroad, 133 Mo. 251; Ries v. Railroad, 179 Mo. 1; Sinclair v. Railroad, 133 Mo. 245; Hook v. Railroad, 162 Mo. 569; Culbertson v. Railroad, 140 Mo. 33; Boyd v. Railroad, 105 Mo. 371; Huggert v. Railroad. 134 Mo. 673. (5) Defendant's instruction numbered 8 is a clear statement of the law and its refusal by the court was error. Sinclair v. Railroad, 133 Mo. 245; Culbertson v. Railroad, 140 Mo. 35; Vogg v. Railroad, 138 Mo. 172; Holwerson v. Railroad, 157 Mo. 227; Moore v. Railroad, 176 Mo. 497; Tanner v. Railroad, 161 Mo. 497; Reno v. Railroad, 79 S. W. 464; Ries v. Railroad, 179 Mo. 1. (6) Where one is placed in a position of peril through the negligence of another, if, after discovering that peril, he could by the exercise of ordinary care avoid the consequences of that other's negligence, but fails to do so, then he cannot recover for resulting injuries. Cooley on Torts (2 Ed.), p. 812; Nellis St. Ry., pp. 383-4; 7 Am. and Eng. Ency. Law (2 Ed.), 385-6; Tanner v. Railroad, 161 Mo. 497; Moore v. Railroad, 176 Mo. 528; Gettys v. Railroad, 78 S. W. 82; Sinclair v. Railroad, 133 Mo. 245; Murphy v. Railroad, 153 Mo. 261; Fanning v. St. L. T. Co., 78 S. W. 62; Reno v. Railroad, 79 S. W. 464; Killian v. Railroad, 86 Mo. App. 473; Peterson v. Railroad, 156 Mo. 52; Klockenbrink v. Railroad, 81 Mo. App. 351; Zamault v. Railroad, 73 S. W. 1015. One cannot, as this plaintiff did, close his eyes and remain in what he knows to be a perilous position and blindly trust to another to avoid the consequences or to take more care for his safety than he himself takes. Davies v. Railroad, 159 Mo. 1; Tanner v. Railroad, 161 Mo. 497; Maxey v. Railroad, 113 Mo. 1; Jones v. Barnard, 63 Mo. App. 501; Evans

v. Railroad, 178 Mo. 517.   If it be admitted that defendant violated both the vigilant watch and speed ordinances (and the violation of these two ordinances is the only negligence alleged in the petition), it is still clear that plaintiff could not recover because her own evidence shows that neither the violation of the vigilant watch ordinance nor the violation of the speed ordinance was the proximate cause of the accident.   Tanner v. Railroad, 161 Mo. 497; Holwerson v. Railroad, 157 Mo. 216; Moore v. Railroad, 176 Mo. 528; Vogg v. Railroad, 138 Mo. 172; Van Bach v. Railroad, 171 Mo. 338.   (7)   The verdict of the jury was grossly excessive.   Stolze v. Railroad, 87 S. W. 517; Chitty v. Railroad, 166 Mo. 442.

*Chester H. Krum* and *William Zachritz* for respondent.

MARSHALL, J.—This is an action to recover $20,000 damages for personal injuries received by the plaintiff on the 25th of May, 1901, in consequence of one of defendant's cars colliding with the rear of a stanhope in which the plaintiff was riding, on Olive street, between Tenth and Eleventh streets, in the city of St. Louis—the accident occurring about 9:25 a. m. The plaintiff recovered a judgment for $9,000, and the defendant, after proper steps, appealed.

THE ISSUES.

The negligence charged in the petition is a violation by the defendant of the vigilant watch ordinance, and of the speed ordinance, of the city of St. Louis. The answer is a general denial, with a special plea, that whatever injuries the plaintiff received were caused by the vehicle in which she was riding being driven in front of the car ''so close thereto as to render a collision therewith unavoidable.''

The reply is a general denial.

The plaintiff introduced evidence tending to show that on the morning of the day on which the accident occurred, she was riding in a stanhope with Mrs. Ramm; that they stopped on the east side of Eleventh street, just south of Olive street, for a few moments, where plaintiff left the vehicle to transact some business in a store at that point; that Mrs. Ramm then turned, and by reason of vehicles being on the east side of Eleventh street, she had to go to the west side of that street, and thence to Olive street, where she turned east; that there was a vehicle coming west on the south side of Olive street between the car track and the curbstone, in consequence of which she drove onto the east-bound track; that before so doing she looked westwardly and saw a car coming, which was, at that time, west of the west line of Twelfth street. The width of Twelfth street is not given in the record, but the block from Twelfth to Eleventh is shown to be 469 feet; that the reason she turned onto the street car track was to avoid collision with the vehicle that was coming west on the south side of Olive street; that, in the language of Mrs. Ramm, "I had the right of way, but this rig had possession of the driveway; it was necessary for me to drive in the car track;" that after getting onto the car track, she again looked back and saw the car on the east side of Twelfth street; that afterwards she left the plaintiff to watch the car, while she directed her attention to the front; that the plaintiff then looked a third time, and the car was at the east side of Eleventh street; that the plaintiff then looked a fourth time, and the car was about to strike them, and she told Mrs. Ramm to get off of the track as quickly as possible; that Mrs. Ramm did not leave the track immediately after encountering the first vehicle coming west, because there was a second vehicle also coming west, on the car track, and so close to the first that it was impossible for her to leave the track, until the second vehicle had pulled off of the track onto the driveway, and in doing it

the wheels of that vehicle caught or slid on the track, which made it necessary for her to check her horse momentarily; that they were driving at a walk; that as soon as the second vehicle got out of the way, Mrs. Ramm immediately commenced to turn off of the track onto the driveway south thereof, but before she had succeeded in clearing the track, the car struck the hind wheel of the stanhope, lifted it about two or more feet above the ground, and the occupants were thrown out, and the plaintiff injured. The vehicle in which the plaintiff was riding went eastwardly eighty-two feet on the track on Olive street before the car collided with it. Mrs. Ramm testified that the reason she did not turn to the left was because there was a west-bound track on that side of the street, and also because there were other vehicles on that side of the street, and that to turn to the left would have been an illegal act.

The evidence for the plaintiff further showed that the car was traveling at a speed of fifteen miles an hour. Prior to the accident the plaintiff was in good health and weighed about 180 pounds. In consequence of the accident she received injuries to her side, ankle, uterus, spine and nerves, and, as one of the medical experts said, is now suffering from traumatic neurosis, and as the other medical expert said, "Her condition is one, now, of nervous debility and exhaustion, irritability of the spinal cord, pain, and that kind of disturbance which comes to the mind from the brain being disordered by a shock, the brain and spinal cord. She had a displacement of the uterine organs." Her physician advised leisure and rest as the best means of effecting a cure; in consequence of which she visited New Mexico, Alabama and Cape Girardeau, Missouri, but at the time of the trial was still suffering, and the medical experts said the probabilities were she would not fully recover.

The plaintiff read in evidence the vigilant watch ordinance of the city, which required the motorman to

keep a vigilant watch for vehicles and persons either on the track or moving toward it and on the first appearance of danger to such persons to stop the car in the shortest time and space possible. The plaintiff also read in evidence the speed ordinance of the city, which prohibited the running of street cars, at the point of the accident, at a greater rate of speed than eight miles an hour.

The defendant's testimony tended to prove that the motorman saw the plaintiff and Mrs. Ramm when the car was not more than forty feet from them; that the car was then running at about six and one-half or, may be, seven miles an hour; that at the time the motorman first saw them, they were driving on the driveway, on the south side of Olive street, between the track and the curb; that when the car was right upon them, they turned and drove suddenly onto the track immediately in front of the car, and so close thereto that the motorman could not stop the car in time to avoid the accident, although he applied the brakes and reversed the power; that the car struck the rear wheel of the stanhope, and the fender raised the wheel three or four feet from the ground; that the car then stopped, and some persons held the stanhope to keep it from turning over, and the car backed away from it; that the stanhope was not seriously injured; that the car was running not more than six miles or eight miles an hour, and that the gong on the car was sounded; that just before the collision, the driver of the stanhope, Mrs. Ramm, checked the vehicle momentarily, which she says was caused by the fact that the wheels of the vehicle ahead of her, which was turning out of the car track, clung to or slid on the rails.

At the close of the plaintiff's case, and again at the close of the whole case, the defendant demurred to the evidence; the court overruled the demurrers, and the defendant excepted.

The instructions given and refused, concerning which error is assigned, will be noted in the course of the opinion.

I.

This action is predicated upon a violation of the vigilant watch ordinance and the speed ordinance of the city of St. Louis, and therefore falls within the rule laid down in Sluder v. Transit Company, 189 Mo. 447. The writer hereof dissented from the opinion of the court in that case, and has not changed his views in regard thereto, but so long as that opinion stands, it is the rule of law in this State, and what is hereinafter said in this case rests upon the rule announced in that case, and is in no sense the views of the writer, so far as the right to maintain the action is concerned. In the judgment of the writer the same conclusion would necessarily be reached if this had been an action for common-law negligence, but for this reason, as well as because the orderly administration of justice requires that the will of the majority shall rule, the writer has no difficulty in reaching the conclusion hereinafter announced.

The principle of law relating to the running of street cars, and of the respective rights of such cars and of pedestrians, and of persons traveling in other vehicles, on the street of a city, have recently undergone adjudication by this court in the cases of Oates v. Railroad, 168 Mo. 535, and Schafstette v. Railroad, 175 Mo. 142.

In the first case cited it was said (l. c. 544): "The sum of the adjudicated cases bearing upon the relative rights and duties of street cars and citizens traveling in vehicles drawn by horses or other animals is, that both have a right to use the street, but that neither has an exclusive right. The operator of a street car is not necessarily obliged to stop the car every time a horse shies or scares at the approaching car, but when the operator of the car sees that a horse is frightened at the

car, it is his duty to manage his car in such manner as a man of ordinary prudence would do under the same circumstances, and it is always a question of fact for the jury whether such care in the running of the car has been observed. This duty may or may not lead to the necessity for bringing a car to a full stop. The duty of the company in this regard is just the same as the duty of one individual or citizen to another when they meet on the highway and the horse of the one becomes frightened at the vehicle of the other, or at anything upon the vehicle of another. Because a street car carries more people than any other kind of a conveyance, or because it is authorized to run more rapidly than a vehicle can ordinarily be legally driven, or because the rush and restlessness of the age make unreasonable demands for more and more rapid transit along the crowded thoroughfares of populous cities, it does not follow that a street car can be run in disregard of the rights of persons traveling by other means, nor that a street car company is exempt from the common-law duty of every one to exercise ordinary care, nor that it is only liable where the agents act wantonly, maliciously and heedlessly.'' That was a case of a head-on collision.

The second case cited was a case of a rear-end collision, between a street car and a vehicle. It was said: ''It is argued, however, that if street cars are required to check up every time a person approaches the track, no time can be made, and that the traveling public demands rapid transit. It is true that street cars are not compelled to check up every time a person approaches a track, but it is equally true that if a person is on or so near a track that a car cannot pass without a collision, and the operator of the car sees, or by the exercise of ordinary care can see, the condition of danger of such person, it is his duty to check the speed of the car, or even stop the car entirely, to prevent injury to the person. This duty is just the same between street cars and a citizen as it is between any two citizens when

using a street. The traveling public has no right to demand such rapid transit on streets of a city as to amount to negligence in the running of the car. The citizen who is not in such a hurry, but is exercising ordinary care while upon the street, has rights that are just as sacred in the eye of the law as those of the hurrying crowds who demand such rapid transit; and if a street car company heeds the demands of the latter class and thereby negligently injures the former, it must stand the consequences.''

The application of these principles to the facts in judgment renders the conclusion very easy. The plaintiff and her friend entered upon the track of the defendant at Eleventh and Olive streets, because another vehicle occupied the space between the track and the curbstone on the south side of the street. The plaintiff and her friend had a perfect right to so drive on the portion of the street on which the car track was laid, for at that time there was no car coming eastwardly nearer than the distance of the length of the block between Eleventh and Twelfth streets, which is shown by the evidence to be 469 feet, and also the distance of the width of Twelfth street, which is not disclosed by the evidence. The vehicle in which the plaintiff was riding progressed on the track eastwardly for a distance of only eighty-two feet before the collision. The plaintiff's vehicle was not sooner turned off of the track onto the driveway south thereof, because, first, sufficient time had to elapse to permit the vehicle going westwardly on the driveway to pass, and, second, because another vehicle was coming westwardly on the same track on which the plaintiff's vehicle was going eastwardly, and so close to the first vehicle that the plaintiff's vehicle could not turn off from the track. The second vehicle turned off from the track onto the south side of the street, but in so doing the wheel caught or slipped on the car rails, and necessitated the driver of the plaintiff's rig momentarily checking the horse. Im-

mediately upon the second vehicle moving out of the way, the driver of the plaintiff's rig commenced to pull off from the track, and had succeeded in getting entirely off of the track except the hind wheel, when the car struck the rear wheel of the rig, the fender thereof raised the wheel three or four feet and threw the occupants out on to the street, and injured the plaintiff. The accident occurred shortly after nine o'clock in the morning. The street was straight. There was nothing to obstruct the view of the motorman on the car. He could have seen the plaintiff's rig on the track more than five hundred feet before the collision occurred. Yet he says he did not see it until he was within forty feet of it. If so, he was negligent in not sooner discovering it. But conceding that he did not see it until he was within forty feet of it, and conceding that the car was running at the rate of six and one-half or seven miles an hour, there is nothing in the record to show that it was even then too late for him to have stopped the car in time to have avoided the injury; for it needs no expert testimony to show that a car traveling at that rate of speed could have been stopped in a distance of forty feet. This is true whether the plaintiff's rig was on the track at the time the motorman first discovered it, or whether it turned suddenly onto the track when the car was forty feet distant from it, as the motorman says was the case. In either event it admits of no question that if the motorman had exercised ordinary care he could have stopped the car in time to have avoided the injury. If, however, the facts were, as shown by the plaintiff's testimony, the motorman saw, or could have seen, the plaintiff's rig on the track for a distance of over five hundred feet before he permitted his car to collide with the rear thereof. And in this view of the case there is no possible room for doubt that the negligence of the motorman was the direct and proximate cause of the injury, and that neither the plaintiff nor the driver of the stanhope were guilty of contributory

negligence. The only room for the application of the doctrine of contributory negligence in this case, if indeed there is any such room, rests upon the testimony of the motorman, that when the car was within forty feet of the stanhope, the driver thereof suddenly turned it off from the driveway on the south side of the street onto the street car track, and that there was not then sufficient time to have avoided the accident. But as hereinbefore pointed out, even if the driver of the stanhope did as charged, there was still abundant time to have stopped the car in a space of forty feet, and have avoided the accident, by exercising the most ordinary degree of ordinary care. The fact that the driver of the stanhope saw the car coming when she drove onto the track, and the fact that she continued on the track until the collision occurred, did not authorize or justify the motorman colliding with the rear of the vehicle.

No amount of amplification or illustration could make the case plainer than the simple facts, whether they be the facts as detailed by the plaintiff and her witnesses, or as detailed by the defendant's motorman and the defendant's other witnesses. The collision was absolutely without excuse, and the judgment must be affirmed unless some error of procedure be found in the record.

## II.

The first instruction given for the plaintiff proceeds strictly according to the rules of law heretofore announced, and upon the facts as developed by the plaintiff's case, but it is criticised because it is said it fails to take into account the contributory negligence of the plaintiff. This objection is untenable for two reasons: first, because there was no contributory negligence of the plaintiff or the driver of the vehicle, shown; and, second, because the instruction given for the plaintiff only authorized a verdict for the plaintiff,

"if the plaintiff and the driver of said vehicle were exercising ordinary care at the time of and before said injury, in averting injury from a collision with said car," and the fifth instruction given for the plaintiff likewise required the jury to find that the plaintiff and the driver of the vehicle "were exercising ordinary care at the time of and before said injury, to avoid a collision."

The first instruction is further criticised because it is said it limits the care of the plaintiff and the driver of the stanhope to the period just prior to driving onto the track; and further because the negligence complained of in the petition is a violation of the vigilant watch and speed ordinances, and that the instruction authorized a recovery if the motorman saw the vehicle on the track, and in danger of injury, and did not use ordinary care to avoid the collision. The second criticism is answerable in the same manner above indicated as to the first criticism.

The second and fifth instructions given for the plaintiff required the jury to find that the plaintiff and driver of the vehicle were exercising ordinary care at the time of and before the collision. The third criticism of the instruction is without merit, for the instruction complained of simply required the motorman and operatives of the car to use common-law care, and the defendant was not injured because the plaintiff did not ask that the defendant be held to that degree of care which is required by the vigilant watch and speed ordinances.

III.

Instruction number five is assigned as error. That instruction authorized a recovery by the plaintiff if the defendant's car was operated at a speed in excess of that permitted by the ordinance, and if, by reason of the excess of speed, the motorman was unable, by the exercise of ordinary care, to avert the collision, and if the plaintiff and the driver of the vehicle were exer-

cising ordinary care at the time of and before the collision. The objection to this instruction is that there is no evidence showing within what space a car, running at eight miles an hour, could have been stopped; nor anything to show that, even conceding that the car was running in excess of eight miles an hour, the excessive rate of speed caused the accident.

The plaintiff's evidence tends to show that the car was running at the rate of fifteen miles an hour, whereas the defendant's evidence tended to show that it was running only six and one-half or seven miles an hour. The plaintiff's evidence tends to show that the motorman could have seen the vehicle on the track when he was more than five hundred feet away from it, and during all the time he was traveling that distance; and the defendant's testimony tends to show that the motorman actually did see the vehicle on the track forty feet before the collision occurred.

If the plaintiff's testimony is true, there can be no question that the car could have been stopped within five hundred feet, or its speed have been reduced while it was covering that distance, in time to have averted the injury. On the other hand, if the car was traveling only six or seven miles an hour, as the defendant's motorman says was the case, and he saw the vehicle on the track, forty feet ahead of him, there can be no doubt that the car could have been stopped in time to have averted the injury. It needed no expert testimony for the jury to draw a proper conclusion from either phase of the case.

## IV.

The modification of defendant's instruction number eight is assigned as error. That instruction told the jury that if the motorman saw the stanhope on the track and immediately reversed his power and applied the brakes, and thus would have averted the accident but for the fact that the driver of the vehicle was pre-

vented from getting off of the track by reason of another vehicle in front of it, and that the collision was due to such failure, then the plaintiff was not entitled to recover, unless the motorman knew, or by the exercise of ordinary care, could have known, that the plaintiff's vehicle was so obstructed, in time to have stopped the car. The court modified this instruction by adding, "unless you find the facts to be as stated in instruction number five," which were that the car was being run at an excessive rate of speed, and that the excess of speed prevented the stopping of the car in time to avoid the collision.

The instruction as asked was broader than the defendant was entitled to, for there is no foundation in fact for the instruction to rest upon. There is no room for doubt upon the facts disclosed by the record that if the motorman had applied his brakes as soon as he saw the danger to the plaintiff had become imminent, the accident could have been avoided. The modification of the instruction, therefore, did not prejudice the defendant. But the modification was proper because the instruction as asked did not cover the phase of the case presented by the fifth instruction asked by the plaintiff, to-wit, that the car was being run at such an excessive rate of speed that it could not have been stopped, by the exercise of ordinary care, in time to have averted the injury. Moreover, the instruction was predicated upon a condition that was not pleaded and which was wholly inconsistent with the special defense interposed by the defendant.

## V.

The refusal to give defendant's instructions 1, 2, 5, 6 and 7 is assigned as error. The first instruction asked by the defendant and refused by the court told the jury that the motorman had a right to assume that the driver of the vehicle, in which the plaintiff was riding, would use reasonable diligence, and get off the track,

and out of the way of the car, unless the motorman knew, or by the exercise of reasonable care and prudence, in looking and listening, might have seen or known, that said vehicle was hindered or impaired in its progress by a vehicle in front of it.

Such an instruction under the facts in this case would have been misleading. For it would have been calculated to make the jury believe that a motorman, seeing a vehicle on the track ahead of him, may proceed without checking the speed of the car, on the assumption that the driver of the vehicle would get off of the track in time to avoid the injury, even though he might see that the driver was not attempting so to do, and in addition the instruction was based upon matters which were wholly outside of and inconsistent with the issues joined.

The presumption of law obtains in ordinary cases, but there is also another presumption of law, which is left out of account by the instruction, to-wit, that the motorman will do his duty, and will so run the car as that a collision will not occur, even though the driver of the vehicle does not do his duty. As was said in Schafstette v. Railroad, supra, "It is true that street cars are not compelled to check up every time a person approaches a track, but it is equally true that if the person is on or so close to the track that a car cannot pass without a collision, and the operator of the car sees, or by the exercise of ordinary care can see, the condition of danger of such person, it is his duty to check the speed of the car, or even stop the car entirely to prevent injury to the person."

The instruction as asked overlooked entirely that duty of the motorman.

The second instruction asked by the defendant and refused by the court told the jury that if the collision was caused by the joint and concurring negligence of defendant's agents in charge of its car, and the driver

of the vehicle, in which the plaintiff was riding at the time of such collision, and that the negligence of either without the concurring negligence of the other, would not have caused said collision, the plaintiff could not recover.

It has been pointed out that there was no negligence on the part of the driver of the vehicle, in which the plaintiff was riding, and therefore there was no basis of fact upon which to predicate the instruction.

Instruction number five asked by the defendant and refused by the court told the jury that if the vehicle, in which the plaintiff was riding, was turned suddenly across the defendant's tracks, in front of its car, and immediately upon discovering that the plaintiff was coming upon the track, upon which the car was moving, the motorman began setting his brakes and reversing the power of the car, and was unable thereby to stop the car and avoid the collision, then the plaintiff could not recover.

The motorman testified that the car was running at the rate of six and one-half or seven miles an hour; that he did not see the vehicle in which the plaintiff was riding, until the car was within forty feet of it; that the vehicle was then turned onto the track, and he gave a very loud ring, and also applied the brakes and reversed the current. When asked on cross-examination why it was if he applied the brakes and reversed the car, the car ran forty feet, he said: "Well, it takes some time to wind up the brake and check it in forty feet if you are going at six and one-half or seven miles an hour." When interrogated by the court, as to how far the vehicle was ahead of him when he first discovered it, he answered: "Well, my car did not quite get to Eleventh street, as I remember."

The undisputed evidence in the case is, that the collision occurred eighty-two feet east of the line east of Eleventh street. Giving, therefore, all the weight to the testimony of the motorman, to which, under the

physical facts, it is entitled, he had forty feet in which to
stop the car, after he applied the brakes and reversed
the power, according to his own testimony, but in fact
he had more than eighty feet in which to do so.

Under such evidence the court cannot be adjudged
guilty of error in refusing to put to the jury a theory of
the case which would cut off the plaintiff's recovery,
which rests only upon testimony which is contrary
to the physics of the case, and to the common
knowledge of all men. A car traveling at the
rate of six or seven miles an hour moves only ten and a
fraction feet a second, and it is manifestly absurd to say
that a car traveling at that rate on a level street could
in forty or eighty-two feet overtake a vehicle traveling
in the same direction, even at a walk, and cause a colli-
sion therewith, after the brakes had been applied and
the power reversed. The testimony of the motorman,
taken in its entirety, does not amount to substantial evi-
dence and therefore affords no basis for the instruction
asked.

The sixth and seventh instructions asked by the de-
fendant and refused by the court were substantially
covered by the eighth instruction asked by the defend-
ant and given by the court, and therefore there was no
error in refusing them.

## VI.

Over the objection of the defendant, the plaintiff
was permitted to testify that she visited New Mexico,
Alabama, and Cape Girardeau, Missouri. The abstract
of the evidence shows that the court admitted this testi-
mony, as bearing upon the question of the plaintiff's
condition, and of her attempts to regain her health, by
following the instructions of her physicians as to rest,
leisure and change of climate. The record further
shows that, in consequence of the trips made by the
plaintiff, her condition was improved.

It is difficult, therefore, to see how the defendant could have been prejudiced by the testimony.

## VII.

The defendant sought to have the plaintiff identify two written statements said to have been signed by her. She testified over defendant's objection that she did not sign one of them, and further that it was not true. This is assigned as error. The statements, themselves, were not offered in evidence, therefore, her characterization of them that they were false, did not injure the defendant, nor did it convey to the jury, as the defendant claims, any impression that the defendant's agents were seeking by trick and artifice to deceive the plaintiff into making a statement, which was unfavorable to her, and not in accordance with the facts.

The defendant produced this condition by interrogating the plaintiff concerning the statements.

## VIII.

The last contention of the defendant is that the verdict is grossly excessive. The defendant disposes of this contention by simply stating it and citing Stolze v. Railroad, 188 Mo. 581, and Chitty v. Railroad, 166 Mo. l. c. 442.

In the Stolze case the verdict was for $15,000, and this court affirmed it on condition that the plaintiff remit $7,000, thus leaving a verdict of $8,000. The verdict in the Chitty case was likewise $15,000. This court ordered a remittitur of $5,000, and thus permitted the verdict to stand at $10,000.

The verdict in the case at bar was for $9,000, which is the average between the verdicts in the Stolze and Chitty cases, and therefore those cases are not authority for the contention that the verdict is grossly excessive.

For the foregoing reasons the judgment of the circuit court is affirmed.

All concur, except *Brace P. J.*, absent.