WALTER H. SPOENEMAN, Appellant, v. WILLIAM C. UHRI.—60 S. W. (2d) 9.

Division Two, April 20, 1933.

*George F. Heege* and *Lehmann & Lehmann* for appellant.

*Taylor, Chasnoff & Willson* and *James V. Frank* for respondent.

ELLISON, P. J.—Suit for $35,000 damages for alleged personal injuries received by the plaintiff in a collision between his automobile and one driven by the defendant. The defendant's answer pleaded contributory negligence. The plaintiff, attempting to avoid that issue, sought to submit the case solely on the humanitarian doctrine, but the trial court refused to give his instruction on that theory. He thereupon went to the jury with only one instruction—on the measure of damages—and the verdict was against him. He appeals contending, as he did in his motion for new trial, that the circuit court erred in refusing to permit the submission of the case on the humanitarian doctrine. The defendant-respondent maintains the ruling was correct because the plaintiff's petition failed to state, and the evidence failed to make out, a case under the humanitarian doctrine, and the instruction rejected was erroneous.

The collision occurred at the intersection of Lindell Boulevard and Boyle Avenue in the city of St. Louis about 9:30 o'clock on the morning of November 7, 1927. Lindell Boulevard runs east and west and is about ninety feet wide. Boyle Avenue is an intersecting street running north and south, and is about twenty-five feet wide. The appellant testified the injuries he received caused amnesia, and that he could remember nothing that occurred from some time before the accident until several days thereafter. The testimony in his behalf came from two eyewitnesses, Thomas J. Shore and Ardell Thompson.

Mr. Shore testified that he was standing at the southeast corner

of the intersection when the cars collided. The appellant was driving west in a Ford coupe on the north or right side of Lindell Boulevard. When he had got about seven feet into the intersection he began to make a left turn southerly into Boyle Avenue. He had his arm out the left car window. The front wheels of the automobile had just about reached the curb at the southwest corner of the intersection when the collision occurred. The front right bumper of the respondent's Buick struck the right rear fender of the appellant's Ford coupe and spinned it around three times, in the course of which the appellant fell from the car to the street. The Ford coupe then caromed off of a truck standing on the east side of Boyle Avenue some fifteen feet south of the intersection and thence ran back into the intersection where it again came into collision with the respondent's automobile and then hit a taxicab. The Ford finally was stopped in Lindell Boulevard with engine running, "about 2 houses" east of the point of collision.

This witness further said that when he noticed the appellant making the left turn in Boyle Avenue he glanced up west along Lindell Boulevard and noticed the respondent's automobile approaching. It was about 400 feet away and traveling east on the south or right side of the thoroughfare at a speed of forty-five to fifty miles an hour. There was a drizzling rain or mist and the street was wet. It appeared to the witness that the respondent's car was going to try to cut in front of the appellant's Ford coupe and that when the respondent saw "he was blocked off" he threw on his brakes and he swung to the left," the collision following. The respondent's automobile left a trail of skid marks which the witness paced off after the accident. They showed it began sliding at a point thirty-five feet west of Boyle Avenue and thus continued clear across Boyle Avenue and beyond for a total distance of about eighty feet. On cross-examination the witness admitted the respondent's automobile was at the head of a line of traffic traveling east on Lindell Boulevard, but he further said when the appellant began to make the left turn this line of cars was back west some three or four hundred feet.

Mr. Thompson, the other eyewitness produced by the appellant, said he was driving south on Boyle Avenue and had stopped at the north side of Lindell Boulevard, where he was waiting for appellant's Ford coupe to pass. The appellant was traveling west on Lindell just to the right of the center line of the street. When he reached about the center of the intersection he made a kind of square left turn. He was moving eight or nine miles per hour and had completed a ninety per cent arc and the front wheels of his car were about past the south line of Lindell Boulevard and entering Boyle Avenue when the collision occurred. The witness described the effects of the collision substantially as Shore had done, saying the Ford spun around three times, tossed the appellant back and forth,

and finally threw him out; that it then swung back into Lindell and again came in contact with the respondent's Buick and with a taxicab.

This witness declared the respondent was back west some 350 feet on Lindell Boulevard when appellant started to make the left turn. Respondent was traveling east about forty-five miles per hour on the south or right side of the street with a large black car following him and the taxicab behind that. There were a number of cars in that line of traffic. The witness did not hear respondent sound any horn or signal, but he did make every possible effort to stop when he saw there was going to be a collision, and his car wheels slid along the street for about thirty feet.

The evidence for respondent was to the effect that the appellant was traveling west about twenty-five miles per hour, and that he "cut the corner" and made a sudden left turn into Boyle Avenue in front of the approaching eastbound traffic on Lindell Boulevard, headed by respondent, when the latter was only fifty to seventy-five feet away. Respondent said he was moving along about twenty-five miles per hour and that he could not avoid a collision by turning out because of a car parked on the south side of Lindell Boulevard, to his right, and the presence of other cars in the line of traffic closely behind him and to his left. He declared he did the only thing he could do in the circumstances by putting on his brakes and sliding the car wheels on the wet pavement; and he said the shortest distance in which he could bring his car to a stop when traveling twenty-five miles per hour was about forty-five feet.

I. Respondent contends first that the trial court properly refused to submit the case on the humanitarian doctrine because the appellant's petition does not state a good cause of action under that rule. The pleaded specifications of negligence on which appellant relies, and which respondent assails, charge:

(a) negligent failure of respondent to use ordinary care to stop his automobile after he saw appellant in front of him in a position of peril and oblivious thereof;

(b) negligent failure to use ordinary care to check the speed of his automobile after he saw appellant in a position of peril and oblivious thereof, in front of him;

(c) negligent failure to turn his automobile to one side after seeing appellant in a position of peril and oblivious thereof;

(d) that after respondent saw, or in the exercise of ordinary care should have seen, appellant in a position of peril and oblivious thereof, respondent in the exercise of ordinary care could have avoided injury to appellant by stopping, checking the speed of, or turning his automobile, and that under the foregoing circumstances respondent negligently drove his automobile violently into the automobile driven by appellant.

Respondent asserts there specifications are insufficient because two further averments are omitted: (1) that he had the present ability with the means at hand to avert appellant's injuries without injury to himself or others; (2) and that he failed to exercise ordinary care to avert the impending injuries to appellant. In so contending respondent relies on Banks v. Morris, 302 Mo. 254, 267, 257 S. W. 482, 484, a leading Missouri case, which sets out a five point formula of "the constitutive facts of a cause of action under the humanitarian rule." Included therein as two of the necessary factual ingredients are the two elements or averments which, as respondent points out, are missing in appellant's petition in this case. Respondent contends that since, under the Banks case, these were *constitutive facts,* and since it has been held a petition must allege all the constitutive facts to plead a good cause of action (Pier v. Heinrichoffen, 52 Mo. 333, 336; Kramer v. K. C. Power Light Co., 311 Mo. 369, 383, 279 S. W. 43, 46) therefore the petition in this cause did not state a case under the humanitarian doctrine.

It may be that if the petition had shown the respondent was acting in an emergency such as would raise the question whether he could have averted the collision without hazard to himself or others, there should have been a further explicit allegation that he reasonably would have been able to do so with the means at hand. But no such facts are pleaded, and the petition does allege the respondent, after having actual or imputed knowledge that the appellant was in a position of peril and oblivious thereof, *"in the exercise of ordinary care* could have avoided injury to plaintiff by stopping, checking the speed of, turning" his automobile. (Italics ours.)

■ Now it is obvious that if respondent did not have the means at hand with which to avert the collision, he would not be guilty of negligence, or an omission of ordinary care, in failing to do so. And this is true, so far as the humanitarian doctrine is concerned, regardless of whether by some antecedent negligence he had put it out of his power to prevent infliction of the injury—such as prior excessive speed; for under that doctrine the law takes the facts as it finds them when the plaintiff's peril arises. [State ex rel. Fleming v. Bland, 322 Mo. 565, 569, 15 S. W. (2d) 798, 799.]

■ Neither should he be convicted of negligence under the humanitarian doctrine if he could have avoided injuring the appellant only by inflicting injury upon himself or third parties—or even only by exposing himself or them to unreasonable hazard. The exercise of reasonable care does not require one man to save another at such expense to himself or his fellows. [42 C. J. sec. 592, p. 890; 45 C. J. sec. 93, p. 712.] We do not mean to say that if a defendant's prior carelessness precipitates such an emergency he will always be excused from liability merely because he could not thereafter avert the casualty without undue hazard to himself or others. He

would be liable—if the plaintiff's petition is bottomed on that antecedent negligence. ■ But where and insofar as the plaintiff, to exculpate himself from the consequences of his own contributory negligence, casts himself on the humanitarian rule, the antecedent negligence passes out of the case and the defendant's conduct is measured by what he could and should have done in the exercise of reasonable care after the plaintiff's peril arose. In other words, both parties lose something—the plaintiff cannot rely on the defendant's negligence antecedent to the beginning of his peril, and the defendant cannot avail himself of the plaintiff's contributory negligence.

■ Summing up the matter, the allegation in the petition that the respondent 'in the exercise of due care could have avoided injury to the appellant by stopping, retarding speed or turning to one side, implies he had the means at hand and could have done these things without unreasonable hazard to himself or others. We will not go out of the way to say explicit allegations of the existence of these latter facts are never necessary, but we do say they were not vital in this case, where the petition disclosed no emergency threatening respondent or third parties, where the humanitarian doctrine was plainly invoked, where the evidence in part was directed to that issue, and where neither by motion, objection to testimony, nor otherwise, was the pleading ever challenged until after the evidence was in. But in this connection attention is called to the fact that even in the Banks case after enumerating the five constitutive elements of a cause of action under the humanitarian doctrine, the opinion goes on a little later to say (302 Mo. l. c. 267-8, 257 S. W. l. c. 485): "The perilous situation plaintiff and defendant's knowledge of it are the ultimate, issuable facts. Such facts and only such facts must be pleaded." And petitions have been held good which omitted specific averments that defendant had at hand means to avoid injuring the plaintiff without undue hazard to himself or third parties. [Anderson v. Davis, 314 Mo. 515, 522, 559, 284 S. W. 439, 440, 452.]

Respondent next contends the petition does not plead he failed to exercise ordinary care to avert the impending injuries to appellant, this being one of the "constitutive facts" enumerated in the Banks case. We think this contention is hardly colorable. The petition does say the respondent in the exercise of ordinary care could have averted the collision by stopping, slowing down or turning, but that instead of doing either he negligently drove his automobile violently against the appellant's automobile. This is certainly tantamount to charging he failed to exercise ordinary care. The contention is ruled against respondent.

■ II. The next point made by respondent is that the evidence failed to make a prima facie case under the humanitarian rule because: (1) there is no showing as to the distance within which his automobile could have been stopped if it were moving at forty-five

or fifty miles per hour, as appellant's witnesses say it was; (2) no evidence as to where his (respondent's) automobile was when appellant came into a position of peril; (3) and no substantial evidence that he could have stopped, checked speed, or turned in time to have avoided the collision, after he knew or should have known appellant was in danger from him.

The testimony for appellant was that when he began slowly to make the turn, with his arm signaling out the window, respondent was back west on Lindell Boulevard some 300 or 350 feet approaching the intersection at a speed of about forty-five miles per hour on the wet pavement, with other cars behind him. Undoubtedly this put respondent on notice, or so a jury might reasonably have found. From then on whether appellant was in peril depended largely on what respondent did if he had control of his further movements. There was nothing to obstruct his view, according to appellant's proof, and yet he traversed that whole distance and collided with appellant's car before the latter had cleared the traffic way. We are not called upon to say precisely when appellant's peril arose, for, since his presence was apparent and his progress uniform it was respondent's duty to refrain from running into him and to adopt measures to that end as soon as necessary. The case is not like one where a person suddenly enters a danger zone, or where the driver of a vehicle has the right to assume a person will stop before going into a position of peril. What the appellant was doing and would continue to do, was evident. (We are speaking now of appellant's evidence, not respondent's version that appellant made an abrupt turn to the left when he was close at hand.)

Did respondent have the necessary control of his movements? He asserts there is no showing as to the distance within which he could have stopped his car if it were traveling at the speed stated by appellant's witnesses, forty-five miles per hour or thereabouts; and says it has been held a court will not take judicial notice of the distance required to stop a moving train, citing several railroad cases; and also that in one case decided by Division One it was ruled judicial notice would not be taken of the distance in which an automobile going ten miles per hour could have been stopped. [Cluck v. Abe, 328 Mo. 81, 88, 40 S. W. (2d) 558, 561.] That case rather questions or qualifies another case, Chawkley v. Wabash Ry. Co., 317 Mo. 782, 797, 297 S. W. 20, 24, decided by the court en banc, in which it was said to be a matter of common knowledge that automobiles of all makes going twenty miles per hour can be stopped in twenty or twenty-five feet, and going twelve miles per hour in twelve or fifteen feet.

Courts are bound to take judicial notice of facts which are matters of common knowledge. [23 C. J. sec. 1810, p. 59; Valley Spring Hog Ranch Co. v. Plagmann, 282 Mo. 1, 10, 220 S. W. 1, 3, 15 A. L. R. 266.] Automobiles are so universally employed in modern

transportation and so commonly under observation that more is generally known concerning their operation than is true of the handling of trains. It is well established that courts may take judicial notice of familiar facts attending their use. [42 C. J. sec. 1000, p. 1201.] We may not judicially know the precise distance in which a given automobile traveling at a particular speed on a particular road can be stopped, but we can set limits. Thus, even with a train, it was held as a matter of law by the St. Louis Court of Appeals in Bowen v. A. T. & S. F. Ry. Co., 256 S. W. 152, that an engineer could not have checked the speed of a passenger train traveling thirty-five miles per hour sufficiently to have saved a mule which suddenly came upon the track fifty feet ahead at night. And in Downs v. United Rys. Co. (Mo. Div. 1), 184 S. W. 995, 996, it was ruled a street car moving ten to fifteen miles per hour could have been stopped in less than 250 feet; and in Latson v. St. L. Transit Co., 192 Mo. 449, 460, 91 S. W. 109, 112, that a street car going six and one-half or seven miles per hour could be stopped in forty feet.

In this case we have no hesitation in saying that if the respondent's automobile was traveling forty-five or fifty miles per hour it could have been stopped within the 300 to 350 foot distance lying between it and the appellant when the latter began to make the left turn; and the smaller the retardation factor of safety the greater the need of vigilance on his part. He does not contend there was anything wrong with his brakes; on the contrary he says they locked his wheels. And the inference is warranted that he could have avoided the collision *without stopping* if he had slowed up enough to allow appellant's Ford coupe to continue only a few feet further. The front wheels of the Ford had entered Boyle Avenue and it was the right rear fender thereof that was struck. [Gann v. C. R. I. & P. Ry. Co., 319 Mo. 214, 227, 6 S. W. (2d) 39, 43.]

Not only that. Respondent says he was going only twenty-five miles per hour as he pursued his course down the street, and he admits that at that speed he could and did stop in forty-five feet. If that is true clearly it was at least a question for the jury whether he might not have avoided the collision by slowing down or stopping. Apparently it is respondent's view that if appellant adopted his testimony on this point his whole story must be taken as true and it must be further conceded that the Ford coupe was turned suddenly in front of the respondent's Buick when the latter was only a short distance away. Such is not the law. The appellant had the right to take advantage of the respondent's admission to help out his own case so far as it did not involve a repudiation of his petition and general trial theory. [Gann v. C. R. I. & P. Ry. Co., supra, 319 Mo. 1. c. 227-8, 6 S. W. (2d) 1. c. 44.]

Respondent further contends there was no substantial evidence tending to show he could have avoided the collision by turning to

one side. Whether there was or not is immaterial, since we have held there was prima facie proof that he could have slowed down or stopped. We will say, however, without going into detail, that in our opinion there was an issue for the jury even on that question.

■ III. The third and last contention made by respondent is that the instruction on the humanitarian doctrine offered by appellant was erroneous and was properly refused for that reason. The instruction told the jury, in substance, that if they believed the appellant was in a position of peril, and that the respondent knew or should have known it in time to have averted the collision ''by using the means at hand to have stopped his said automobile or slackened the speed thereof or swerved its course, *having due regard for the safety of (himself) and his said automobile,*'' (italics ours) and that he negligently failed to do so, wherefrom appellant's injuries resulted, then their verdict should be for the appellant.

There was evidence for the respondent that he could not stop, slow down or turn aside because of other cars in the line of traffic behind him and to his left, the occupants of which would have been imperiled if he had checked speed or turned left. He said, further, a car parked to his right near the intersection, prevented his turning that way. Respondent contends the italicised portion of the foregoing instruction is wrong because it declares him liable if he could have saved the appellant without hazard to *himself* or his car, ignoring the question whether he would thereby have injured or imminently threatened the safety of others.

Neither party has cited authority but we cannot escape the conclusion that the point is well taken. Practically the same criticism of an instruction was made in Gann v. C. R. I. & P. Ry. Co., supra, 319 Mo. l. c. 229, 6 S. W. (2d) l. c. 44, but there the question was not decided because of a holding that the instruction on a proper construction did not raise it. Now it is squarely before us. The instruction here covers the whole case and authorizes a verdict. It says the verdict should be for appellant if respondent could have averted the collision without injury to himself or his car—and this in the face of evidence for respondent tending to show the collision could not have been averted without injury to others. The Banks case, supra, 302 Mo. l. c. 267, 257 S. W. l. c. 484, rules that the proof must establish as a constitutive part of the plaintiff's cause of action that the defendant could have saved him without injuring others. We have held earlier in this opinion that the exercise of ordinary care (under the humanitarian doctrine) does not require the defendant to prevent injuries to one man by inflicting them upon another. Certainly a rule founded upon ''precepts of humanity'' ought not to require that, especially when it is remembered that in such instances the plaintiff, in a way of speaking is *particeps criminis*

because of his contributory negligence, whereas the third party **is** or may be wholly innocent.

Since the appellant's instruction was prejudicially erroneous, the trial court committed no error in refusing to give it. The judgment is affirmed. *Tipton, J.,* concurs; *Leedy, J.,* not sitting.