ANNA MCCARTHY v. JOHN SHERIDAN, Appellant.—83 S. W. (2d) 907.

Court en Banc, June 5, 1935.*

*NOTE: Opinion filed at September Term, 1934, April 16, 1935; motion for rehearing filed; motion overruled at May Term, June 5, 1935.

1202

*Green, Henry & Remmers* for appellant.

*Frank L. Ramacciotti* and *Eagleton, Henwood & Waechter* for respondent.

·FRANK, C. J.—Action to recover damages for alleged personal injuries. Plaintiff recovered judgment for $8500 and defendant appealed. The cause was argued and submitted in Division One where an opinion by Commissioner STURGIS reversing and remanding the cause was adopted as the opinion of the court. Because of a dissent of one of the judges in division, the cause was transferred to court en banc where it was again argued and submitted.

Appellant contends (1) that the evidence was not sufficient to warrant the submission of the case to the jury under the humanitarian rule, and (2) that the instruction submitting the case under that rule was erroneous. The opinion in division rules both contentions against appellant. We agree with and adopt that part of the opinion so holding. It reads as follows:

"Plaintiff received personal injuries by reason of a collision with defendant's automobile on September 7, 1929, while she was endeavoring to reach the sidewalk after alighting from a street car going west on Olive Street in St. Louis. The street car on which she was riding, going west on Olive Street, stopped for passengers to get off or on when it came to the intersection with Jefferson Avenue, a north and south street, and plaintiff alighted from the exit at the center of the car and was crossing the line of vehicle travel between the street car track and the north curb of Olive Street when the collision occurred. The plaintiff alleges several specifications of negligence on defendant's part causing her injury, such as driving his automobile at an excessive and· dangerous rate of speed, failing to give any signal or warning of his approach or the movement of his automobile, failure to stop or slacken the speed of his car after discovering plaintiff in the line of his travel, and negligence under the humanitarian rule in that defendant driving his automobile westward on Olive Street saw, or by the exercise of due· care could have seen, the plaintiff upon such highway in or approaching the line of his travel and in a position of imminent peril of being struck by such automobile in time for the defendant thereafter to have stopped the automobile, slackened the speed, or swerved the same to one side or warned plaintiff of his approach, and thus and thereby could have

avoided said collision and injury to plaintiff, but that defendant negligently failed to do so.''

The case was tried to a jury and after all the evidence was in plaintiff chose to submit her case solely on defendant's violation of the humanitarian rule of negligence as above stated, thus eliminating the question of plaintiff's contributory negligence. The court overruled defendant's demurrer to the evidence and submitted the case for plaintiff on an instruction covering the humanitarian rule and one on the measure of damages. The jury found for plaintiff in the sum of $8500, the court overruled defendant's motion for new trial and entered judgment for plaintiff, and defendant has appealed.

The defendant's first insistence is that plaintiff's evidence does not make a case for the jury under the humanitarian rule in that the evidence fails to show that the defendant saw or should have seen the plaintiff in imminent peril of being struck by his automobile while he yet had time with the means at hand to have stopped the car or so slackened the speed thereof or swerved it to one side and thereby have avoided striking and injuring plaintiff. Plaintiff's given instruction required the jury to so find and if the evidence warranted such finding, then the court properly overruled the demurrer and submitted the case on such instruction. This contention requires an examination of the evidence most favorable to the plaintiff. Olive Street, on which the street car on which plaintiff was a passenger was going west, is a rather wide street leaving a space of some thirty feet between the street car track and the north curb, ample space for westbound automobiles to pass between the safety zone where street car passengers were accustomed to alight from or enter such cars and the north curb. According to plaintiff's evidence, when the street car stopped at the intersection of Jefferson Street, plaintiff and other passengers alighted from the street car at the exit door in the center of the street car and plaintiff walked northwesterly, carrying a large bundle of merchandise under her arm, a distance of about fifteen feet, when she was about five feet from the usual line of westbound automobiles. Here she paused to allow automobiles to pass to her north, one of which stopped with the hind wheels right in front of her. She says she then looked east and saw defendant's car coming west in the line of traffic some twenty-five feet distant from her. Defendant's car was not then traveling very fast, about ten miles per hour, and when it was about ten feet from her it suddenly swerved to the left or south out of the regular line of traffic, apparently with intent to pass the stopped car on the south, and then increased its speed. This movement placed defendant's car in line with plaintiff's position in the street and, as plaintiff says, ''ran right into her.'' Plaintiff attempted to step back out of the way of defendant's automobile but it struck her, knocking her to the pavement.

Another witness for plaintiff testified that he was standing on the northeast corner of Jefferson and Olive at the time of this accident. He saw the lady (plaintiff) before she was struck and saw the automobile also. She was standing about five feet from the rail that the street car runs on and about five feet from the westbound automobiles. There was a line of cars. One car had stopped and there was room for this lady to get through there but she was five feet away from the distance to get through. This fellow (defendant) was behind the rest of them and he came out and struck her and knocked her down about two or three feet. He came up from the back of the cars and swerved to the left and the front fender of the car knocked her west. He did not hear any horn sounded. And on cross-examination he said: The lady (plaintiff) was not standing either east or west of the car that was stopped. She was south of it. She was standing about at the front part of where the street car stopped and that is where the automobile was that was standing, which would mean that the front of the automobile was even with the east building line of Jefferson and plaintiff was just south of this automobile. Defendant's car swerved out and struck her. It was going about ten or twelve miles an hour. He saw this car about twenty feet away from the stopped car. When defendant was about twenty-five feet back of the cars he was going about ten miles an hour. When he turned out he had to slow up a little and then pick up a little speed. He did not slow up when he turned out. There were two cars stopped and the plaintiff was about five feet south of them and she was about ten feet north of the street car. After defendant's car struck plaintiff he went about five or six feet and then backed up against the curb and shut it down. He backed up toward the north curb.

Defendant himself testified that going at the rate of ten to fifteen miles per hour under the conditions then existing, he could have stopped his car in from six to ten inches, but his version of the occurrence was that he did not turn out of the line of automobile travel but when the street car stopped to discharge passengers he also came to a complete stop with his car and that he did not run his car against plaintiff but that she hurriedly ran against his standing car, throwing herself to the pavement. This, of course, the jury did not have to believe.

On this evidence taken most favorably for plaintiff we think the court properly overruled the demurrer and submitted the case to the jury. Defendant's argument is that under this evidence he did not have time to stop his automobile and avert the collision after plaintiff came into a position of peril; that plaintiff was not in a position of peril till after defendant swerved his automobile to the left or south and that his automobile was then only ten feet from plaintiff and that ten feet is too short a distance on which to predi-

cate negligence in failing to stop. The argument of his attorney is that defendant's own evidence that he could have stopped at the rate of speed his car was traveling in six to ten inches is preposterous and not credible evidence. Defendant's attorney insists that it is common knowledge in this day and therefore that the court should take judicial knowledge that defendant could not have stopped his automobile in that short space. It is a novel proposition for the attorney of an appellant to ask this court to reject and disregard his client's positive evidence as being unbelievable, but, however that may be, it is not essential to overruling the demurrer that we give full credence to defendant's evidence on this point. According to defendant's contention, he had at least ten feet in which to have stopped the car after turning out of the usual line of travel and there is other evidence that he did in fact stop his automobile in five or six feet after he struck plaintiff and that he had increased rather than decreased his speed up to the point of collision. It is true that plaintiff was not in actual peril till defendant swerved his car to the left out of the usual line of travel, but the jury may well have believed that defendant saw or should have seen plaintiff in her then position before defendant actually swerved the car to the left and changed his line of travel so as to inevitably strike plaintiff. Her position of imminent peril was created by his turning out of the regular line of travel to a new line of travel over the spot where plaintiff was moving or standing, and he could and should have observed this before or at the time he determined to take the new route. In the congested condition of traffic and knowing that he was passing a street car discharging its passengers, he doubtless was alert and had his car under control so as to stop on the first appearance of danger, and the jury may well have concluded that he knew or should have known of her position of imminent peril in the line of his intended travel in ample time by prompt action and the use of the highest degree of care to have stopped his car before striking her. [Banks v. Morris & Co., 302 Mo. 254, 269, 257 S. W. 482; Phillips v. Henson, 326 Mo. 282, 30 S. W. (2d) 1065, 1067.] We rule this point against the defendant.

Defendant criticizes plaintiff's instruction submitting the case on the humanitarian doctrine in that in requiring the jury to find that defendant could have averted the collision by stopping or lowering the speed of his car, it omitted the requirement that he could have done so without inflicting injury on or endangering the safety of other persons using the street. The instruction as given contains the requirement that defendant could do so with safety to himself and his automobile. It is held in Spoeneman v. Uhri, 332 Mo. 821, 60 S. W. (2d) 9, 11, in regard to the driver of an automobile, that "neither should he be convicted of negligence under the humanitarian doctrine if he could have avoided injuring the

appellant only by inflicting injury upon himself or third parties, or even only by exposing himself or them to unreasonable hazard. The exercise of reasonable care does not require one man to save another at such expense to himself or his fellows. [42 C. J., sec. 592, p. 890; 45 C. J., sec. 93, p. 712.]'' In Banks v. Morris & Co., 302 Mo. 254, 267, 257 S. W. 482, Judge RAGLAND stated: ''The constitutive facts of a cause of action under the humanitarian rule'' include the ability of the driver or engineer of the offending motor car ''to have averted the impending injury without injury to himself or others.'' It was pointed out, however, in the later case of Spoeneman v. Uhri, supra, that the element of ''injury to himself or others'' does not inhere in every case under the humanitarian rule, and that ''petitions have been held good which omitted specific averments that defendant had at hand means to avoid injuring the plaintiff without undue hazard to himself or third parties. [Anderson v. Davis, 314 Mo. 315, 522, 559, 284 S. W. 439, 440, 452.]'' It is true that the Spoeneman case held an instruction erroneous which omitted the element of ''safety to others'' and predicated plaintiff's right to recover solely on the ground that defendant could have stopped his car with safety to himself ''and this in face of evidence for respondent tending to show the collision could not have been averted without injury to others.'' In the present case there was no evidence whatever that the stopping or slackening of the speed of defendant's car or swerving it to plaintiff's left would have endangered the safety of other persons, and in the absence of any such evidence we do not think it was error to omit that requirement from the instruction. If defendant had tried to excuse his action in failing to use the means at hand to avoid striking plaintiff by showing that to do so would have endangered the safety of other persons, a different question would have been presented. Defendant raised no such issue in this case.

Appellant next contends that the court erred in refusing to give his requested Instruction No. 12. That instruction reads as follows:

''The court instructs the jury that if you find and believe from all the evidence that defendant's automobile was stopped at the time plaintiff came in contact therewith, then, independent of any other issue in the case, plaintiff cannot recover and your verdict must be in favor of defendant.''

Defendant offered evidence tending to show that when the street car stopped, he stopped his automobile; that the street car door opened and several passengers, including plaintiff, got off the car; that plaintiff made a hurried move in a northwesterly direction and ran into the left front fender of his automobile, then fell to the pavement; that at the time of the accident, his automobile was standing still.

Appellant's theory of the case, as revealed by his evidence, is that plaintiff ran into his automobile while it was standing still. He contends (1) that he was entitled to have his theory of the case submitted to the jury, and (2) that his refused instruction number twelve would have correctly submitted his theory.

No one disputes the fact that defendant had the right to have his theory of the case submitted to the jury, and if he chose to exercise that right and have his theory of the case submitted by an instruction of his own choosing, it was his duty to request a correct instruction. So the question to be determined is whether or not the instruction requested by defendant and refused by the court, was a correct instruction. As a matter of course, if defendant's automobile was standing still and plaintiff ran against it and was injured she cannot recover—but does the instruction clearly submit that issue? We think not. To tell the jury that plaintiff cannot recover *if the automobile was stopped at the time she came in contact therewith,* does not clearly submit the theory that the automobile was standing still and that plaintiff ran against it while it was so standing. The language of the instruction is open to the construction that the automobile was brought to a stop at the instant of the collision. Such a construction would leave out of consideration defendant's alleged negligent failure to stop the automobile, or slacken the speed thereof, or swerve the same in time to prevent the collision. The most that can be said of the instruction is that its language is open to two constructions, one of which does not correctly declare the law applicable to the facts, and for that reason it was not error to refuse it. The correct rule is stated in Dunn v. Dunnaker, 87 Mo. 597, 602, as follows:

"Instructions are intended as guides to the jury, and should be clear declarations of the law applicable to the facts; and if open to two or more constructions, one of which is at variance with the law, they should be refused."

In the case at bar, one juror might conclude that the instruction meant that if the automobile was brought to a stop at the instant of the collision, plaintiff could not recover, while another juror might construe the instruction as meaning that if the automobile was standing still and plaintiff ran against it while it was so standing, she was not entitled to recover. Laymen might construe it either way. The ambiguity of the instruction was of itself a sufficient ground for its refusal. Trial courts may not be convicted of error in refusing to give an instruction which is not substantially correct in both form and substance, although the giving of such instruction would not be reversible error.

The judgment should be affirmed. It is so ordered. All concur.