In Matter of Estate of T. J. TRAUTMANN; ARTHUR P. TRAUTMANN v. MOLLIE TRAUTMANN, Administratrix of Estate of T. J. TRAUTMANN, Appellant.

Division One, July 31, 1923.

1. **WITNESS: Incompetency: Waiver.** Where a witness is incompetent because the other party to the transaction is dead, and such incompetency is once waived, it will be deemed waived for all further purposes of the litigation.

2. **DISCOVERY OF ASSETS: Procedural Changes: Examination under Oath: Interrogatories.** The statute providing for the discovery of assets of the estate of a decedent has undergone fundamental changes since its enactment in 1825. While the provision that the person cited may be examined under oath has been retained, it no longer serves a procedural purpose, but independent of it the defendant may be brought into court by citation, issues framed by interrogatories and answers, and a trial had upon those issues, with or without a jury, as in ordinary civil actions. Examination under oath of the person cited is not a necessary procedural step, and is not a condition precedent to the framing of issues by written interrogatories and answers and a trial.

3. ——: **Citation of Defendant: Examination under Oath: Waiver of Incompetency.** In a procedure to discover assets of the estate of a decedent, an oral examination under oath before the probate

Trautmann v. Trautmann.

court of the person cited, by affiant, waives the incompetency of such witness to testify in a subsequent trial before a jury, both in the probate court and in the circuit court on appeal. And the fact that at the time such defendant was so examined under oath no written interrogatories or answer had been filed, does not impair the waiver. Such examination is not a necessary step in the proceeding, and the plaintiff by making use of it waives the defendant's incompetency to testify, and such waiver will continue in a subsequent trial before a jury on the issues made by the subsequently-filed written interrogatories and defendant's answer thereto.

4. **INSTRUCTION: Number of Witnesses.** An instruction telling the jury that the number of witnesses testifying upon any given question is of no consequence and is not to be considered, is technically erroneous.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

REVERSED AND REMANDED.

*Mayes & Gossom* and *Charles G. Revelle* for appellant.

(1) Plaintiff waived the incompetency of defendant as a witness by voluntarily compelling her to be sworn and to be orally examined before the probate court touching her knowledge and information of the matters and things in issue. Ess v. Griffith, 139 Mo. 329; Estate of Soulard, 141 Mo. 642; Hoehn v. Struttmann, 71 Mo. App. 402; Brokerage Co. v. Humes, 193 Mo. App. 131; Borgess Inv. Co. v. Vette, 142 Mo. 570; Secs. 5412, 5417, R. S. 1919; Strode v. Frommeyer, 115 Mo. App. 220; Killian v. Heinzerling, 114 N. Y. App. Div. 410; Rice v. Waddill, 168 Mo. 99. (2) Wholly independent of plaintiff's waiver of defendant's incompetency as a witness, defendant was competent to testify to her possession, custody and acts of control at the time of and prior to the death of her husband, Dr. Trautmann. Elsea v. Smith, 273 Mo. 407; Burn v. Polar Wave Ice & Fuel Co., 187 S. W. 147;

First Natl. Bank v. Payne, 111 Mo. 298; Kille v. Gooch, 184 S. W. 1158. (3) Wholly independent of plaintiff's waiver of defendant's incompetency as a witness, she was competent to testify to her visit to the bank where the deposit box was rented and in which the bonds were placed, and to her access to said box and to her having opened and entered said box during the lifetime of Dr. Trautmann. Weiermueller v. Scullin, 203 Mo. 466.

*Ward & Reeves, B. F. Guffy, Elliot W. Major* and *Peter T. Barrett* for respondent.

(1) Doctor T. J. Trautmann being dead, Mollie Trautmann, his widow, was incompetent to testify to any conversations or transactions had with him relative to the alleged gift of the bonds, and such incompetency was not waived by filing of interrogatories by plaintiff, or by the oral examination of said Mollie Trautmann under oath, before the probate judge, when she did not admit the allegations in the affidavit, prior to the filing of the interrogatories. R. S. 1919, secs. 63, 66, 5410; R. S. 1909, secs. 71, 74, 6354; Tygard v. Falor, 163 Mo. 234; Carmody v. Carmody, 266 Mo. 556. Such oral examination and filing of said interrogatories were not voluntary acts upon the part of plaintiff, but were necessary steps before plaintiff could proceed and are mandatory requirements. Citations above. (2) Mollie Trautmann is not a competent witness to testify to any admissions or conversations of her husband, whether made to herself or to third parties. R. S. 1919, sec. 5415; Moore v. Wingate, 53 Mo. 409; Moore v. Moore, 51 Mo. 118; Willis v. Gammill, 67 Mo. 731. (3) Mollie Trautmann is not a competent witness in this case to testify in her own favor, her husband being dead, to establish any right or title to any property belonging to him, claimed by her to have been derived by her through gifts from him and alleged to have been made to her in his lifetime. R. S. 1919, sec. 5410; Lieber v. Lieber, 239 Mo. 12 to 28; Bishop

v. Button Inv. Co., 229 Mo. 669; Carmody v. Carmody, 266 Mo. 556; Tygard v. Falor, 163 Mo. 234.

RAGLAND, J.—This is a proceeding under the statute to discover assets of the estate of a decedent. Plaintiff is a distributee; defendant is the widow of the deceased and also his administratrix. The following excerpt from appellant's statement fairly outlines the procedure followed:

"(The) proceeding (was) originally instituted in the Probate Court of Pemiscot County upon an affidavit by the plaintiff under Section 62, Revised Statutes 1919, to discover assets. Upon the filing of the affidavit a citation compelling the defendant's appearance in court was duly issued and served upon her. Whereupon she appeared, . . . denying the allegations of the affidavit in so far as they charged that she was wrongfully withholding a certain automobile, diamond ring, household furnishings and Government bonds in the sum of $14,000, and asserting title and ownership to said property under and by virtue of a gift thereof to her by her deceased husband, Dr. Trautmann, during his lifetime. . . . She was, at the instance of the plaintiff, sworn, . . . and was orally examined at great length by plaintiff touching and concerning her entire knowledge and information of the title and ownership of said property. The direct examination was conducted by plaintiff's own counsel, and not by the probate court, and in plaintiff's examination of her he required her to testify as to the circumstances of the gift, the conditions under which it was made, the place and time at which made, the persons present when made, the language of the donor at the time he made the gift, the delivery to her of the possession, her subsequent custody and control thereof, and the use to which she applied it, and, in fact, examined her as fully and exhaustively concerning every phase, fact and circumstance as could be inquired into.

"Thereafter, plaintiff filed his formal interrogatories after which, and in due time, defendant filed her formal answers thereto. The case was tried in the probate court before a jury, which returned a verdict finding that the gift had been made during the lifetime of Dr. Trautmann, and that the defendant was the owner of the property in question at, and prior to, the death of the former owner, Dr. Trautmann. An appeal was taken by the plaintiff to the circuit court, where the case was heard *de novo* by a jury, which returned a verdict . . . finding that the Government bonds in the sum of $14,000 had not been given to her (the defendant), and that at the time of the death of Dr. Trautmann he was the owner thereof, and that said bonds should be inventoried as assets belonging to his estate."

On the trial *de novo* in the circuit court the defendant offered herself as a witness. After she was sworn and had testified as to the date of her marriage to Dr. Trautmann and the date of his death, this question was then propounded to her by her counsel: "During the time of your marriage to Dr. Trautmann, what, if anything, did he do in the way of giving to you and delivering possession of fourteen thousand dollars worth of bonds?" The question was objected to on the ground that the other party to the contract or cause of action was dead. On the question of whether or not the incompetency of the witness had been waived, defendant offered a transcript of her testimony given in the probate court prior to the filing of the interrogatories. The circuit court held that there had been no waiver and sustained the objection. The correctness of that ruling is the question presented for determination on this appeal.

I. It is conceded, as it must be, that defendant was incompetent to testify to any conversation or transaction had with her husband, he being then dead, relative to the alleged gift of bonds. Such incompetency, however, could be waived, and the question here is whether

Trautmann v. Trautmann.

Discovery of
Assets: Ex-
amination Under
Oath: Waiver:
Statutes.

plaintiff did waive it by having defendant sworn and orally examined touching the entire transaction between her and her husband, prior to the filing of the interrogatories. Respondent takes the position that the oral examination of defendant in the probate court was a necessary procedural step, with reference to which he had no choice, and that compliance by him with a mandatory provision of the statute could not have operated against him as a waiver in any respect, citing Tygard v. Falor, 163 Mo. 234, and Carmody v. Carmody, 266 Mo. 566.

The second section of the statute under which the proceeding was had (Sec. 71, R. S. 1909) is as follows:

"If the party so cited does not admit the allegations in the affidavit, he shall be examined under oath, after which, at the instance of the administrator or executor, other witnesses may be examined both for and against such party; but before such other witnesses shall be examined, interrogatories shall be filed in writing, to be answered also in writing by the parties cited."

Great emphasis is placed upon the language, "shall be examined under oath;" it is contended that it is mandatory and jurisdictional; in other words, that a compliance with its provisions is a condition precedent to the framing of issues by written interrogatories and answers and a trial of such issues.

Our statute for the discovery of assets of the estates of deceased persons is an evolution. As originally enacted, in 1825, it provided that if the executor or administrator, or other person interested in any estate, represented on oath to the probate court that he had good cause to believe, and did believe, that any person had concealed or embezzled any goods, chattels, etc., belonging to the estate, the court was authorized to require the appearance of such person before it and to examine him on oath for the discovery of same. It did not contemplate the calling of witnesses or the trial of any issue with respect to the title or ownership of assets alleged

pursuant to its provisions to have been concealed or embezzled. It was purely *ex parte* and designed solely as a summary means of discovery. By amendment from time to time, the scope and purpose of the statute have been so broadened that, in accordance with its summary provisions, not only may the discovery of assets be effected, but the right of property in the property claimed as assets can be tried and adjudicated as between the estate and the person having such property in possession, or under his control, even if such person be the executor, or administrator, himself, but claiming adversely to the estate; and if the issues be determined in favor of the estate, a delivery of the property can be enforced, or its inventory compelled, if in the hands of the executor, or administrator. [Tygard v. Falor, supra; Carmody v. Carmody, supra.] The statute thus serves a two-fold purpose, it provides for both the discovery and the recovery of assets. [In re Huffman's Estate, 132 Mo. App. 44; Clinton v. Clinton, 223 Mo. 371.]

The first amendment giving any hint as to the disposition of controversies that might be engendered by the charge that assets of an estate had been concealed or embezzled appeared in the Revision of 1845. It provided that upon the appearance of the person cited that the court should "examine him and *other witnesses,* on oath for the discovery of same," and if the person cited, "in his answer to the interrogatories," denied the right of the executor or administrator to the goods and chattels charged to have been concealed or embezzled, the right thereof should be tried by a jury, or by the court if a jury were waived, in a summary manner, and judgment should be rendered according to the right. [R. S. 1845, pp. 74, 75.] In the Revision of 1855 the language as to the forming of issues underwent a slight modification. It was made to read, that if the person cited, in his answer to the interrogatories, denied "the truth of the facts alleged in the affidavit," the issues should be tried by a jury, etc. [R. S. 1855, p. 130.] It was not until 1879 that

the statute took its present form with respect to the filing of written interrogatories and answers. [R. S. 1879, sec. 76.] The procedural change thus effected was fundamental. As the statute stood from 1845 to 1879, the issues to be tried were made by the affidavit charging concealment or embezzlement and the oral answers of the person cited pursuant to the charge, upon his examination under oath; subsequently the issues were framed by written interrogatories and written answers thereto. While the provision that the person cited should be examined under oath was retained, it no longer served a procedural purpose; independent of it the defendant was to be brought into court by citation, issues were to be framed by written interrogatories and answers, and a trial of those issues was to be had with or without a jury as in ordinary civil actions. As the statute now stands the examination under oath of the person charged with withholding assets of an estate does not form the basis of any succeeding step to be taken in the proceeding; the right to compel such an examination is merely in aid of the original purpose of the statute, namely, that of discovery. Such examination being merely auxiliary to the main proceeding, it follows that it may be demanded or not, as the person who intitiates the proceeding elects.

The statute under review, with reference to the provision authorizing the examination under oath of a party charged with withholding the assets of an estate, and the statute empowering one party to a civil action to compel his adversary to testify as a witness in his behalf, were both designed to accomplish the same purpose, namely, to afford a more speedy and efficient method of discovery than was given by bill under the old chancery practice; and both were enacted at a time when a party to a suit, under the laws of this State, was not a competent witness. [Tyson v. Sav. & Loan. Assn., 156 Mo. 588, 594; Matthews v. Railroad, 142 Mo. 645, 668.] The necessary effect of both statutes was to remove such in-

competency when their provisions were invoked by those for whose benefit they were enacted. The only practical distinction between them at the present time is that the one relating to discovery of assets affords the plaintiff in such a proceeding the privilege of compelling the defendant to testify in advance of the filing of any pleading by himself. If in such case the plaintiff waits until the written interrogatories and answers are filed and then requires the defendant to testify, either on the trial, or by deposition, he clearly waives for all purposes of the suit, the defendant's incompetency arising from the death of the other party to the contract or cause of action; can plaintiff by calling defendant in advance of the framing of the issues, under the permissive authority of the statute, avoid such waiver?

One of the purposes to be subserved by the statute which renders a party incompetent to testify in his own favor when the other party to the contract or cause of action in issue and on trial is dead is the putting of the parties to a litigated controversy, in those circumstances, on a footing of equality. Where the lips of one of the original parties to such contract or cause of action are sealed in death, the law closes the mouth of the other. As, however, the disqualification imposed by the statute is for the benefit of him who stands in the place of the deceased party, or whose rights are derived through him, he may waive it and require the surviving party to testify as a witness in his behalf. In doing so, however, he may not limit his waiver. He cannot so restrain the competency of the witness that the latter can only testify to such subject-matter and under such circumstances as will be beneficial to him. His waiver will be deemed to be for all purposes; otherwise the statute itself would become an instrument of injustice. [Ess v. Griffith, 139 Mo. 329; Strode v. Frommeyer, 115 Mo. App. 220.] We have accordingly held that when a party to a suit takes the deposition of the other party, who is incompetent to testify to facts involving the terms of a transaction be-

Trautmann v. Trautmann.

tween himself and a deceased person, he thereby waives the incompetency of that other as a witness for all purposes, whether the deposition be offered upon the trial or not. [Borgess Inv. Co. v. Vette, 142 Mo. 560; Ess v. Griffith, supra.] We have further held that if in such case the party taking the deposition suppresses it without even filing it, a waiver occurs notwithstanding. [Rice v. Waddill, 168 Mo. 99, 120.] The underlying principles upon which the rulings in those cases were based apply with equal force to cases of the character of the one under review. If the plaintiff in such cases could require the defendant to disclose under oath all the facts and circumstances touching the transaction giving rise to the controversy and then *silence* him, he would not have to be a strategist of any great skill to be able to so frame his pleading (the interrogatories) and to so marshal the evidence as to put the defendant at serious disadvantage. The unfairness of such a proceeding, to say nothing more of it, is manifest.

As already pointed out the examination of the defendant under oath, under the discovery-of-assets statute, is not a procedural requirement, but only a taking of testimony in aid of discovery. Such an examination, if made, involves a waiver of incompetency, and there seems to be no valid reason for excepting it from the general rule, namely: "A waiver of objection to competency made at one stage of the taking of testimony is a waiver during the whole progress of that proceeding." [In re Estate of Soulard, 141 Mo. 642.] The circuit court was in error therefore in ruling that defendant's incompetency as a witness had not been waived.

II. The instruction defining "burden of proof" and "preponderance of the evidence," given at the instance of the plaintiff, was technically erroneous, in that it in effect told the jury that the number of witnesses testifying upon any given question was of no consequence and was not to be considered.

Instruction.

[Hite v. Railroad, 225 S. W. 916; 10 R. C. L. 1005.] Whether this error was of itself sufficiently prejudicial as to have required a reversal of the judgment we need not determine, as it can be avoided upon another trial.

Because of the erroneous ruling with respect to the waiver of the statutory disqualification of the defendant as a witness, the judgment of the trial court is reversed and the cause remanded for another trial. All concur.