Julia Weingart, a legatee under the will of her brother, William Weingart, instituted this proceeding by filing in the probate court of the city of St. Louis an affidavit charging that she had good cause to believe and did believe that Elmer Stetzel, executor under the will of William Weingart, had concealed or otherwise wrongfully withheld a certain deed of trust on property at 1210 Tower Grove avenue, St. Louis, Missouri, in the principal amount of $1,500, due April 27, 1938, which deed of trust was in his possession or under his control. In due time a citation was issued and served, interrogatories filed, and answer thereto made.
In the answer to the interrogatories, defendant denied possession of said deed of trust, the note which it secured, and the proceeds thereof.
After proceedings in the probate court, the case was appealed to the circuit court, where it was tried to a jury, who returned a verdict in favor of the claimant and against the defendant, and assessed the claimant's damages in the sum of $1,500, with interest at 6% per annum from September 16, 1936, to the date of judgment. Thereupon the court, on October 13, 1941; entered a judgment that the estate of William Weingart, deceased, have and recover of Elmer Stetzel the sum of $1, 95.3.5O, together with the costs of the proceedings.
Interrogatories 1, 2, 3, and 4, called upon defendant to disclose whether he ever had had, or at the date of William Weingart's *Page 974 
death had, in his, possession, custody, or control, either a note in the principal amount of $l-,500 secured by a deed of trust on property at 1210 Tower Grove avenue', St. Louis, Mo., belonging to William Weingart, or the proceeds thereof, and Interrogatories 5 and 6 inquired whether defendant ever had had or at the time of William Weingart's death had. in his possession or under his control said deed of trust.
In his answer to these interrogatories, defendant denied having in his possession or under his control at the time of William Weingart's death, or at any time, a note, the proceeds thereof, or a deed of trust belonging to William Weingart.
The evidence disclosed that defendant was engaged in the real estate business, and for a number of years had received money for investment in deeds of trust from the Weingart family, which consisted of the father, John; the mother, Mary; and three children, Julia, claimant herein; William, the deceased; and Tom. Tom apparently did not engage in the practice of investing money with defendant.
Julia acted as agent for the other members of the family in the making of these investments. According to her evidence, it was the defendant's practice to give her a card for each member of the family who invested with him, showing the investments made by each. The cards were ordinary index cards, on which were typewritten the name of the person investing, at the top of the card, followed by a list of his or her deposits and investments. Defendant made out the cards, added to or changed them as new deposits or investments were made, and personally delivered them to claimant, Defendant denied he ever issued such cards,
The investments, such as deeds of trust and notes, were sometimes kept by claimant in her safe deposit box, but usually they remained with the defendant.
Claimant further testified that prior to William Weingart's death her father's card, issued by defendant, had listed on it as an investment belonging to her father a deed of trust for $1,500 on property located at 1210 Tower Grove avenue, St, Louis, Missouri. She testified that she went to defendant's office and told him to transfer that deed from her father's card to William's card, as William had paid three years taxes on his father's home, plus certain special taxes, making a total of $1,500. Defendant replied "O.K." and filled out a new card for William, on which he listed the $1,500 deed of trust on 1210 Tower Grove avenue, along with the other items on William's old card. He gave this new card to claimant, and destroyed both her father's card and William's old card. She kept William's card in her possession, and had it at the time of his death. At the time of his death the $1,500 loan had not beer, paid either to her or to her brother.
She stated that after her brother William's death she and her brother Tom went to her bank and checked over the papers in her safe deposit box. They found that the deed of trust on 1210 Tower Grove avenue was not among the papers, At the time she had with her the loan card, on which were listed: The Tower Grove deed of trust; a $3,000 deed of trust on 1118 South Boyle; a $700 deed of trust for property on Hughes place; and a $350 deed of trust for property on Daratdale avenue, She and her brother Tom then went to defendant's office, and later the three of them went to the bank, where she handed the safe deposit box to defendant. He took from the box William Weingart's will, read it, and placed it back in the box. Claimant then asked him about the Tower Grove deed of trust, and defendant replied that it was at his office.
The next day defendant called at claimant's house, stating' he would have to have the will Claimant went with him to the bank, where he secured the will and the $350 note. He tore up the note, and when claimant remonstrated, stating that it was a part of her brother's estate, he replied that he knew it but he was going to put up the cash in the inventory.
About two weeks later the defendant came to claimant's home. At that time claimant asked him about the Tower Grove avenue deed of trust and he replied: "I haven't come across it yet. If I don't come across it, don't worry. I will give you three $500 each." Thereafter claimant and her brother Tom went to defendant's office, and had a further talk with defendant concerning the deed of trust in question. Claimant had with her at the time the card showing the deed of trust listed among William's investments. Defendant took this card from ber and destroyed it, giving her a new card on which was omitted the Tower Grove deed of *Page 975 
trust, but on which appeared in place thereof the following: "$1,300.00 Open. Wm. 4 John. Adj., to be checked." There also was listed: "$3,000.00 1118 S. Boyle Ave,, May 22, 1937. Int. Due May Nov. 22. $700.00 1342-46 Hughes PL, Jan. 2, 1938. Int. July Jan. 2. $350.00 Open."
Thereafter she again called at defendant's office, and defendant told her he did not want to see her anymore. The next morning she received a letter from him, stating that if she wanted any more information she should see his lawyer. The letter also stated: "This deed of trust was never a part of William Weingart's property. It was held by you at one time to secure the $1500 belonging to Mary Weingart, which $1,500 was paid in full to said Mary Weingart. The property that originally secured the $1500 was defaulted by the owner and we salvaged the $1,500 by making a sale of the property. The interest payments of $45.00 each six months was paid to Mary Weingart. Yours very truly, Elmer Stetzel."
When defendant filed the inventory in the estate, he listed among the assets cash in the sum of $350, but failed to list the Tower Grove deed of trust. Thereafter the `affidavit for discovery of assets was filed in the probate court, and this proceeding initiated.
The defendant testified that he inventoried all of the securities given to him. He stated that when he later was asked about the Tower Grove deed of trust, he told them that he would look it up; that after checking it, he found it was paid off and not due to the estate of William Weingart. He stated that he had set aside this deed of trust to the Weingart family to secure them while foreclosing for them another $1,500 deed of trust which they owned on property on Railroad avenue; that after the Railroad avenue deed of trust was foreclosed, he paid to them the $1,500. Defendant then introduced two cancelled checks payable to Mary Weingart, one for $300, dated April 7, 1936, and the other for $1,200, dated September 25, 1936, and testified chat they represented the amounts realized from said sale. Defendant also introduced a receipt signed by Mary Weingart, dated September 25, 1936, acknowledging receipt of $1,200 from Edw. F. Wrisberg Real Estate Co. In full for all money invested with it through Julia Weingart, except for $350. Claimant admitted receiving these amounts for her mother, but stated that she and her mother had money invested with defendant, and that these checks were given in payment of loans owned by her and her mother, and that the checks did not represent any transactions with respect to her brother William's estate.
Defendant's evidence further shows that the Tower Grove deed of trust was released of record on June 1, 1936. Prior to that time claimant was the record owner of the property as straw party for defendant, and had executed, a lost note affidavit in connection with the release. Defendant further testified: "The deed of trust that was put on after that was a deed of trust for $2,000, which was the amount over the 6 rat deed of trust, which included the second deed of trust that we had on the property, but that wasn't the same deed of trust. That property was bought in the name of Robert Green, who is also our straw man."
Claimant was a. relative of defendant, and had acted as straw party for him in various transactions for a number of years-. She stated that she may have signed the lost note affidavit, but did not know what she was signing; that whenever she signed anything for defendant the papers she signed were blanks and she did not know what she was signing.
On rebuttal a handwriting expert testified that the deposit cards, which claimant had testified were given to her by defendant, were written on the same typewriter as the letter dated December 4, 1936, which defendant admitted writing to claimant.
The first three assignments of error discussed in appellant's brief can be considered together. They are: (1) The court erred in refusing to give and read to the jury the instruction in the nature of a demurrer to the evidence offered at the close of the whole case; (2) the court erred In giving Instruction No. 1 at plaintiff's request; and (3) the court erred in refusing to give and read to the jury Instruction C requested by appellant.
By Instruction No. 1 the court charged the Jury that if they found that at the time of William Weingart's death the appellant bad in his possession $1,500 which belonged to William Weingart; that demand had been made upon appellant to account to the estate for said sum; and that the demand had been refused; then they should find against appellant and in favor *Page 976 
of the estate In the sum of $1,500 with interest.
Instruction C, if giver, would have charged the jury that claimant had failed to prove that the deed of trust in question belonged to William Weingart at the time of his death, and that therefore the jury should find for defendant.
In support of said assignments, appellant contends that since the original affidavit filed by respondent alleged that appellant had concealed specific property, to-wit: a deed of trust in the principal amount of $1,500, due April 27, 1938, on property at 1210 Tower Grove avenue, and since the proof showed that the property was not in existence, having been cancelled and released of record prior to William Weingart's death, that therefore recovery should have been denied.
In answer to this contention, respondent argues that since the written interrogatories filed by respondent and the appellant's answers thereto framed an issue as to whether appellant was wrongfully withholding the proceeds of the deed of trust, the demurrer was properly overruled, and the court did not err In giving Instruction No. 1, which submitted said issue to the jury, and did not err in refusing defendant's Instruction C.
Our statute for the discovery of assets of deceased persons was first enacted in 1825. Revised Laws of Missouri 1625, page 100, Said act provided that if any executor or administrator, or other person interested in the estate of a deceased, should represent on oath that he had good cause to believe, and did believe, that any person had concealed or embezzled any goods, chattels, etc., belonging to the deceased person, the court might require the appearance of such person before it for examination under oath for the discovery of such property; and the act further provided that if such person so summoned should fail to answer proper interrogatories, the court could commit him to jail, and that if such person were convicted of unlawfully detaining said property, the court could compel the delivery of same by attachment. Section 22.
The act made no provision for trial by jury, for the calling of witnesses, or for the trial of any issue with respect to the title or ownership of the assets in question, The statute was framed solely to provide a summary means of discovery.
The act remained unchanged until 1841, when the general assembly amended it so as to provide for a trial by jury of the issue of ownership of property alleged to have been embezzled or concealed. Sess. Acts, 1640-1, p. 4.
In the 1845 revision, the wording of this amendment is slightly different. It reads: "If any person charged and cited as aforesaid shall appear, and in his answer to the Interrogatories, deny the right of the executor or administrator to such goods, chattels, money, books, papers, or evidences of debt, the right thereof shall he tried by a jury, or if neither party require a jury, by the court, in a summary manner, and judgment shall be rendered according to the right, and for costs," R.S.Mo. 1845, Chap, 3, Art. II, § 11, p. 75.
In addition to the above amendment, § 9, Chap, 3, of the 1845 revision provided for the examination of other witnesses at the examination of the parties charged.
The 1855 revision made a slight change in the language of the foregoing section, providing that if the person cited, in his answer to the interrogatories, denied "the truth of the facts alleged In the affidavit," the issue should be tried by a jury, etc. R.S.Mo. 1855, Chap. 2, Art. II, § 10, p. 130. This revision, for the first time, contains the section extending the remedy as against an executor or administrator. R.S.Mo. 1855, Chap. 2, Art. II, § 8, p. 130.
The statute remained unchanged until the 1879 revision, when the provision with respect to the filing of written interrogatories and answers thereto appeared for the first time. R.S.Mo. 1879, Chap. 1, Art. IV, § 76, p. 13; now R.S.Mo. 1939, § 64, Mo.R.S.A. § 64. Said section is as follows: "* * * If the party so cited does not admit the allegations in the affidavit, he shall be examined under oath; after which, at the instance of the administrator or executor, other witnesses may be examined both for and against such party; but before such other witnesses shall be examined, interrogatories shall be filed in writing, to be answered also in writing by the parties cited,"
Section 78 of said Chap. 1, Art. IV, p. 13, now § 66, R.S.Mo. 1939, Mo.R.S.A, § 66, provides further: "The issue upon the interrogatories and answers thereto, shall be tried by a jury, or if neither of the parties require a jury, by the court, in a summary manner, and judgment shall be rendered *Page 977 
according to the finding and for cons, and, if convicted, the court shall compel the delivery of the property detained by attachment * * *."
The effect of this amendment has been explained by Ragland, J., in Trautmann v. Trautmann,300 Mo. 314, loc. cit. 321, 254 S.W. 286, loc. cit. 288, as follows:
"The procedural change thus effected was fundamental. As the statute stood from 1845 to 1879, the issues to be tried were made by the affidavit charging concealment or embezzlement and the oral answers of the person cited pursuant to the charge, upon his examination under oath; subsequently the issues were framed by written interrogatories and written answers thereto. While the provision that the person cited should be. examined under oath was retained, it no longer served a procedural purpose; independent of it the defendant was to be brought Into court by citation, issues were to be framed by written interrogatories end answers, and a trial of those issues was to be had with or without a jury as in ordinary civil actions. As the statute now stands, the examination under oath of the person charged with withholding assets of an estate does not form the basis of any succeeding step to be taken in the proceeding; the right to compel such an examination is merely in aid of the original purpose of the statute, namely, that of discovery, Such examination being) merely auxiliary to the main proceeding, it follows that it may be demanded or not, as the person who initiates the proceeding elects."
In Davis v. Johnson, 332 Mo. 417, 58 S. W.24 746, 749, the supreme court held that in the, case of the death of persons alleged in an affidavit filed under the statute to be concealing or withholding assets, the suit could be revived in the name of their administrator; that upon trial, judgment should be rendered according to the finding of the court or jury, on the issues made by the interrogatories and answers; and that upon a refusal by the personal representative to deliver the property, a judgment for the value thereof as for a conversion should be entered, The court said:
"Let it then, be assumed that upon a trial it be found that the original defendants received certain moneys and other personal property belonging to the deceased testator, and had withheld and converted the same In; an amount and value shown. Is there any reason why the court could not, as required by the statute, `render judgment according to the finding'? We know of none, and none has been pointed out. Such a judgment would determine finally the amount in which the estates of the deceased defendants were indebted to the estate of the testator, Gibson, at his death. [Citing cases.] It would constitute an adjudicated and incontestable claim which could be filed and presented in the probate court to be classified against the estates of the deceased defendants. Marks v. Hardy,96 Mo. 232, loc. cit. 23S. On the other hand let it be assumed that a finding that specific' property was BO withheld and was among the chattels of the defendants at their deaths, and afterward in the possession of their personal representative, the appellant. We see no reason why a trial might not be had in which the title to such property would be determined, or why upon a refusal of the appellant to deliver the same, the attachment feature might not be disregarded and a judgment for the value thereof entered as for conversion, or other Judgment suitable to the finding and not involving commitment, to be classified in the same manner as in the other instance mentioned."
In Newell v. Kern, 218 S.W. 443, loc. cit. 446, this court, through Reynolds, P, J,, said: "It is objected that under Section 70, as well as by Section 72, of the Revised Statutes, 1909 [Mo.R.SA. §§ 63, 66], the specific property alleged to have been detained, concealed or held out, must be identified and awarded in specie, and that unless that has been done, the administrator cannot recover. That was an old doctrine of this state, but was disposed of to the contrary by our court in a very learned and exhaustive opinion by Judge Goode, In re Estate of Huffman, 132 Mo.App. 44, 111 S.W. 848. That case proceeds under the authority of the decision of our Supreme Court in Tygard v. Falor,163 Mo. 234, 63 S.W. 672. Later the decision of our court in the Huffman case and of the Supreme Court in the Tygard case was distinctly affirmed by the Supreme Court in Clinton v, Clinton,223 Mo. 371, 123 S.W. 1, all of these cases overruling alder decisions of the appellate courts which had seemed to hold to the contrary."
In Tygard v. Falor, 163 Mo. 234, 63 S, W. 672, an executor was cited. The affidavit alleged that the executor neglected and refused to inventory money received *Page 978 
by the executor, as agent of. the deceased, prior to intestate's death. Interrogatories were filed, The evidence showed that defendant, a son of deceased, prior to his father's death shipped and sold cattle be-longing to big father. In answer to interrogatories, defendant claimed that his father had made him a gift of the proceeds of this sale. In affirming a judgment for plaintiff, the court said that the interrogatories and answers settled and definitely fixed the issue to be tried, and that after the filing of the interrogatories and answers the affidavit had become functus officio.
In Ex parte Fowler, 310 Mo. 339, 27S S.W. 529, a habeas corpus proceeding, the court, after a hearing at which no evidence was heard, and without securing an admission by the party charged in the affidavit under the statute, entered a judgment that the movant, an administrator pendente lite. recover from petitioner the sum of $4,512.94, and ordered that petitioner turn over raid sum to the administrator pendente lite on or before a certain date or show cause why he should not do so. Upon petitioner's failure to obey this judgment or order, he was committed to jail. The Supreme Court held that petitioner was committed without authority of law, saying, loc. cit. 533 of 275 S.W.:
"The statutes, supra, clearly contemplate that the admission must be one made in the particular proceeding: (in this case on the motion and affidavit filed by the brothers), and not otherwise or elsewhere. If the party cited makes the admission of the truth of the charges, then such admission would make the filing of interrogatories superfluous.
 * * * * *
"In the absence of an admission, then, there is no case until interrogatories are filed, and answer made thereto. Under the statute, it is then, and then only, that we have issues to be determined by a Jury or by the court. These interrogatories serve as the pleadings in the case, and make the triable issues. Absent triable issues, and a trial, the court is without power to enter a judgment or order. `Judgments must be upon issues made, and without issues made there is nothing upon which the court can act or make an adjudication."
In re Decker's Estate, 348 Mo. 32, 152 S.W.2d 104, is of no great Interest here except for the statement of Judge Gantt, that: "Of course, the interrogatories and answers are the pleadings and settle the issues involved. Starke v. Lincoln,316 Mo. 483, 291 S.W. 132; Spencer v, Barlow,319 Mo. 835, 55 S.W.2d 28."
In Lolordo v. Lacy,337 Mo. 1097, 89 S.W.2d'353, loc. cit. 360, the court said: "This court has held (as have the Courts of Appeals) that, where specific personal property of an estate has been sold and the proceeds deposited in the bank account of the seller, the summary proceeding to discover assets is a proper remedy to compel him to pay the amount of the proceeds to the estate, and that this remedy is rot `confined to . a. particular fund — the actual money which belonged to the decedent.' [Citing cases]."
See In re Van Fossen, Mo.App., 13 S.W. 2d 1076, and In re Trautmarnn's Eat., 300 Mo. 314, 254 S.W. 286.
(1] After considering the provisions of Sections 63 to 67 inclusive, R.S.Mo.l939, MoR.S.A. §§ 63 to 67 inc., and the fore-" going cases, we are. of the opinion that in a proceeding under the statutes to discover assets, the issues to be tried are made by the interrogatories and answer; and in the trial .of those issues, the inquiry is not limited to the specific property alleged in the affidavit to have been wrongfully withheld, In cases where the claimant has, by his interrogatories, broadened the scope of the issues so as to embrace matters disclosed by the original examination under oath.
[2] The record shows that respondent by his interrogatories directed an inquiry to appellant, seeking information as to whether appellant had at any time in his possession the proceeds of the note secured by the deed of trust in question, and that appellant in his answer denied such possession. Thus an issue was framed by the interrogatories, with respect to the possession of the proceeds of said note secured by said deed of trust, and it was not error to submit the issue to the jury.
Appellant has cited a number of cases in support of his contention. Among them are Stewart v. Glenn, 58 Mo. 481, decided 1874; Dameron's Adm'r v. Dameron, 19 Mo. 317. decided 1854; and Howell v. Howell, 37 Mo. 124, decided 1865. These cases hold that if in the affidavit it is alleged that a specific item has been concealed or embezzled, the remedies afforded by the act are not available if it appears that prior to the filing of the affidavit the *Page 979 
person charged had parted with possession of the property. These cases were decided prior to the amendment of 1879, which provided for the filing of written interrogatories and answers. As the law stood at the time said cases were decided, the affidavit defined the issues. It is cleat, therefore, that these cases are not in point.
Appellant has also cited Brotherton v. Spence, 52 Mo. App. 664; In re Skelly's Estate, Mo.App. 223 S.W. 690; Wilson v. Ruthrauff,82 Mo.App. 435; In re Stuart's Estate, 67 Mo.App. 61; and Williams v. Williams, 145 Mo.App. 382, 129 S.W. 454.
In Brotherton v. Spence, supra, plaintiffs, distributees of an estate, filed an affidavit charging that defendant, the widow of the deceased, had converted to her own use certain personal property belonging to the estate The defendant appeared, and upon examination admitted she had taken the property, but the evidence did not disclose whether any of the personal property in question was in her possession when the affidavit was filed, The plaintiffs thereupon asked leave to file interrogatories, to be answered by the defendant, and further asked leave to introduce evidence showing the amount and value of the personal property thus converted. The court denied the request on the ground that the administrator refused to file interrogatories as required by law, and, thereupon, dismissed the plaintiffs' petition. The appellate court affirmed this action of the court, holding that under the law the administrator was the only one authorized to file interrogatories, and said, loc. cit. 667 of 52 Mo.App.:
"Besides this proceeding can only be maintained where the identical assets are still in the hands of the party cited. Dameron's Adm'r v, Dameron, 19 Mo, 317; Howell v, Howell, 37 Mo. 124.' The administrator may have refused to proceed, because the identical assets were no longer in possession of defendant.
"It is the duty of an administrator to inventory all of the assets of the estate, and to file additional inventories when he discovers additional assets. For his failure to do so, he is liable upon his bond, The remedy of the affiants in this ease is ample, all the more so since they specially called the attention of the administrator to the existence of these assets, which he failed to inventory. They have given him an opportunity to try the question as to whether the property mentioned is assets of the estate, and he has declined to avail himself of it. He has done so at his' peril. But the court could not confer on the affiants the right to try the question in this proceeding on their own behalf, when the administrator declined to do so on his own."
It will be observed that the actual decision in the case wag that the trial court did not err in dismissing the case; since it Appeared that the administrator refused to file interrogatories. The court further held that the administrator alone could initiate the proceeding upon interrogatories, What was said with respect to the limited scope of the remedy was not necessary to the decision, and was not a correct statement of the law.
In re Stuart's Estate, supra, rode off on the same point.
As a matter of interest, we might add that the effect of these decisions was annulled by the general assembly in 1909, by an amendment to § .73 of Art. IV, Ch. I, R.S.1899, now § 67, R.S.Mo. 1939, Mo.R. S.A. § 67, adding a provision that further proceedings, after the examination of the party cited, should not depend upon the desire of the executor, administrator, or surviving partner. Laws of 1909, p. 93, Therefore, the decisions in Brotherton v. Spence and In re Stuart's Estate, supra, do not announce any principle of law applicable at the present time.
In re Skelly's Estate, Mo.App., 223 S. W, 690, 691, was a proceeding under the statute against an administrator, wherein plaintiff's petition alleged that defendant had failed to inventory a note executed by him in favor of the deceased. Among the interrogatories, the following appeared:
"Interrogatory 3. At the time of the death of Elizabeth H. Skelly, or prior thereto, did. you owe her the sum of $1,000? If so, was the same secured by note?
"Answer: At the time of the death of Elizabeth H, Skelly I was not indebted to her; prior to her death I owed a note.
"Interrogatory 5. At the time or prior to the death of Elizabeth H. Skelly did you owe her any money on note, or otherwise, that you paid? If so, tell how much, when, and how paid.
"Answer: Nothing other than shown at No. 3 above."
Plaintiff produced proof, that prior to the death of Mrs. Skelly, the defendant borrowed $1,000, *Page 980 
and executed a note. The court instructed the jury that if they found those facts, the law would presume that the debt remained unpaid, and that If they so found they should find the defendant was indebted to the estate in said amount with interest. The appellate court, held that the instruction was erroneous in authorizing a verdict for the value of the note, since the interrogatories did not allege that defendant was withholding or failing to account for cash. IN other words, the case merely held that the instruction was beyond the scope of the issues made by the interrogatories. It lends no support to appellant's contention in the case at bar. Here the instruction was within the issues made by the interrogatories.
In Wilson v. Ruthrauff, 1900, 82 Mo. App. 435, a distribute of an estate filed exceptions to a final settlement, claiming that the administrator should have inventoried and accounted for a debt due from him to the estate for rent of premises belonging to deceased. The court held that such issue could not be tried on exceptions to final settlement. What was said with respect to proceedings under the statute providing for discovery of assets was pure dictum.
Williams v. Williams, supra, was a suit by legatees under a will to recover from an executor rent for real estate used by the executor subsequent to the testator's death, The court held that the action would not lie as the probate court had exclusive Jurisdiction of the matter, and, in passing, held that the statutes providing for discovery of assets had no application as the sum sought to be recovered did not belong to the deceased at the time of his death.
Our conclusion, after an examination of the applicable statute and the cases cited by both parties, is that the court did not err in overruling appellant's request for a directed verdict, in giving respondent's Instruction No, I, or in refusing to give appellant's Instruction C.
Appellant next complains of the action of the trial court in refusing to give his requested Instruction L, which instruction declared that the burden of proof was "upon Julia Weingart to show not only that William and his father entered into an agreement to exchange said property, but also that said agreement, if any, was carried out by a delivery to William Weingart of the deed of trust."
[3-5] This instruction was properly refused, because It was misleading. It might have led the jury to believe that actual manual delivery of the deed of trust to William Weingart was necessary before William acquired title to it. The evidence shows that in the matter of lovestments, defendant acted not only for the father, but for the brother as well. Defendant received money from Julia Weingart, who acted for various members of her family. With this money, defendant bought deeds of trust, which he set apart for the account of the respective member of the family for whom he made the purchase. He usually retained the custody of the securities purchased, Under such circumstances, no physical transfer to William Weingart him self was necessary to effect a transfer of title to him. All that was necessary, was some unequivocal act on defendant's part, manifesting an intention henceforth to hold the property for William, instead of for the father. This defendant did by entering the deed of trust on William's card, and striking it from the father's card. Valid delivery can be made to an agent or trustee. Instruction C eliminated that possibility in this case. Therefore, the court did not commit error in refusing it.
[6] Appellant also contends that a directed verdict for defendant should have been given as there was no proof that defendant ever received any money for the deed of trust claimed to have been converted.
The evidence shows that at the time the deed of trust was released of record, a new loan was negotiated and another deed of trust for two thousand dollars placed on the property. Defendant testified: "That deed of trust was paid off and released. A new loan was negotiated." In view of this testimony, we do not believe there is any merit to appellant's contention.
[7,8] Appellant also complains of the court's refusal to give defendant's requested Instruction E. If given, that instruction would have charged the jury that if they found that at the time of William Weingart's death "the securities mentioned in evidence were released of record and marked Paid, prior to his death, and that William Weingart was not at said time the owner of and entitled to the possession of such securities," they should find for defendant. The court properly refused this *Page 981 
instruction as it was confusing and ambiguous. It is not clear whether the jury were to find ownership of the deed of trust at the date it was released of record or at the date of William's death. Therefore, the instruction was open to two different constructions, one announcing a correct rule of law, and the other an incorrect one. Under such circumstances, the instruction must be declared erroneous. Landon v. United Rys. Co. of St. Louie, Mo.Sup., 237 S.W. 496; Freeman v. Berberich,332 Mo. 831, 60 S.W.2d 393; Lee v. Shryack-Wright Grocery Co., Mo.App., 53 S.W.Sd 406; McCarthy v. Sheridan,336 Mo. 1201, 83 S.W.2d 907; Rodenkirch v. Nemnich, Mo.App.,168 S.W.2d 977.
Defendant would not have been entitled to a verdict merely upon a showing that William's Interest was destroyed by reason of the release of the deed of trust. There still remained the issue of his liability for the proceeds of the deed of trust.
Appellant complains of the refusal of defendant's Instruction F. That instruction charged that if the jury found that prior to William Weingart's death claimant had released the deed of trust, such fact might be considered as prima facie evidence that the deed of trust was not outstanding and was not the property of William Weingart at the time of his death.
[9] The evidence was undisputed that claimant, acting: as straw party for defendant, did release the deed of trust prior to William's death. With this evidence in the case, claimant by her Instruction No. 1 submitted the issue of defendant's liability for the proceeds of the deed of trust. By giving Instruction No. 1, which we have held was within the issues raised by the interrogatories and answer, claimant adopted the theory that William Weingart's interest in the deed of trust had been destroyed by' the release of the deed of trust, and that defendant was liable for the proceeds of same. `Instruction F did not deal with the issues finally submitted to the Jury, and was properly refused.
Appellant next complains of the court's refusal to five Instructions G and H. Instruction G charged that if the jury found `that at the time of William Weingart's death the Wrisberg Real Estate Company-had in its possession the deed of trust, and that it had been released of record by claimant, then such release and possession were prima facie evidence of ownership for value, and the Wrisberg Real Estate Company was presumed to be the owner of the security. Instruction H declared that under the negotiable instruments law, the mere possession of a negotiable note endorsed by the payee raised a prima facie presumption of the proper transfer to the holder thereof.
[10, 11] In holding that the refusal of these instructions was not error, it is sufficient to say that where there is evidence pro and con on an issue, as there was here on the issue of the ownership of the deed of trust and note in question, the case should go to the jury upon the evidence unaided by any reference to presumptions. Gibson v. Metropolitan Life Ins. Co., Mo. App.,147 S.W.2d 193; Swoboda v. Nowak. 213 Mo.App. 452,255 S.W. 1079; Bailey v. Bailey, Mo.Sup., 11 S.W.2d 1026; Lampe v. Franklin American Trust Co,, 339 Mo. 361, 96 S.W.2d 710, 107 A.L.R. 465; MeCune v. Daniels, Mo.App., 251 S.W. 458; Haycraft v, Grigsby, 68 Mo.App. 354.
[12] Appellant complains of the refusal to give Instruction J. That instruction charged that under the pleadings and evidence the court found that Mary Weingart and Julia Weingart, after the death of William Weingart, received from defendant $1,200, and in consideration of the payment released the Wrisberg Real Estate Company from any and all liability for the payment to the Weingarts of any other or further sum, other than the sum of $350, and the verdict of the jury therefore should be for defendant. Clearly this instruction, was properly refused. Defendant could not relieve himself from the duty of accounting for a sum of money due the estate of William by showing payment to and a release by a third party who had no right to receive the fund or release the debt.
Instruction K presented the same theory and was properly refused for the same reason.
[13] Appellant complains of the refusal of the court to give. Instruction D, a burden of proof instruction. It was not error for the court to refuse said Instruction, for the burden of proof was fully covered by Instructions No. 3 and No. 4 given by the court at defendant's request.
[14] Appellant next urges that Julia Weingart was disqualified from testifying *Page 982 
under. § 1887, RS.Mo. 1939, Mo.R.S.A. 1687, There is no merit to this contention. Julia Weingart was acting merely as agent for her brother in the transaction with reference to the deed of trust, and was not the other party to the transaction within the meaning of the statute.
[15] Appellant complains of the action of the trial court in admitting claimant's exhibits 3 and 7. Exhibits was the card which claimant testified, defendant had given to her after her brother's death, and was identical with the original Card which she testified defendant had given her at the time she requested the transfer of the Tower Grove deed, of trust to her brother's account, except that the sum of $1500 was listed instead of the deed of trust. Exhibit 7 was a copy of the original card which claimant's brother, Tom made after William Weingart's death. These cards were admissible as admissions against interest. 31 C.J.S., Evidence, § 282, p. 1032.
[16] Finally, appellant urges that the court erred in overruling defendant's objection the argument of claimant's counsel. In said argument, counsel for claimant commented on defendant's failure to produce and introduce in evidence all the checks, books, and records of the Wrisberg Real Estate Company, relating to defendent's transactions with the Weingart's, in support of his contention that he had paid off all sums owed to the Weingart's end the estate of William Weingart. It is apparent from the record that defendant handled all matters relating to the Weingart loans through the Wrisberg Real Estate Company. Defendant had. testified that the Tower Grove deed of trust never belonged to William Weingart, but had been set aside to secure the Weingart family, while defendant foreclosed a deed of trust for them on property located on Railroad avenue, lie further testified that the proceeds of the latter deed of trust were paid to the persons entitled thereto, Julia and Mary Weingart, and introduced two cancelled checks of the Wrisberg Real Estate Company, one for $1,200 and one for $300, which he stated were checks in payment of the proceeds of said deed of trust. He further testified that Julia, who handled all of the investments for the family, had been paid in full. He introduced no records or checks to corroborate this testimony, and because of failure to produce such evidence claimant's counsel made the argument complained of. Its evident purpose was to cast suspicion on defendant's testimony by showing that if defendant's testimony were true, defendant could have supported it by documentary evidence readily available to him, We believe this was legitimate argument, and do not believe it violated the rule that no comment can be made upon a party's failure to produce evidence equally available to both parties. The evidence here was not equally available to both parties. It consisted of records of the Wrisberg Real Estate Company, which must have been under the control or readily available to its secretary and treasurer, the defendant herein, but not available to plaintiff. We do not believe that the court erred in overruling the objection to the argument.
As we find no error in the record, the judgment is affirmed.
HUGHES, P.J., and McCULLEN, J. concur. *Page 1