**Opal DENNISON, (Plaintiff) Respondent,**

**v.**

**William BESSELMAN, (Defendant) Appellant.**

**No. 31129.**

St. Louis Court of Appeals.

Missouri.

Nov. 20, 1962.

Rollin J. Moerschel, Niedner, Niedner & Moerschel, St. Charles, for appellant.

Bardgett, Gallagher & Hackmeyer, Clayton, for respondent.

RUDDY, Acting Presiding Judge.

Plaintiff brings this action for damages for personal injuries and damages to her automobile alleged to have been sustained by plaintiff when the automobile she was driving and an automobile driven by defendant collided. Defendant filed a counterclaim in which he alleged he sustained personal injuries and damages to his automobile. There was a verdict and judgment for defendant on plaintiff's cause of action and for plaintiff on defendant's counterclaim. Defendant has appealed from that part of the judgment for plaintiff on his counter-claim. Plaintiff has not appealed.

The sole contention of defendant is that the trial court erred in giving Instruction No. 4 offered by plaintiff.

The collision between the two automobiles occurred on January 28, 1961, about 8:30 A.M., as plaintiff was in the process of making a left turn to go south on Hanley Road where it intersects with St. Charles Rock Road in St. Louis County. Traffic at this intersection is regulated by electric signals. St. Charles Rock Road in the area of the intersection has two through westbound lanes and a lane for persons driving westwardly who desire to turn left and go south on Hanley Road. For eastbound traffic there were two eastbound lanes and in addition a lane for persons driving eastwardly who desire to turn left and go north on Hanley Road. The eastbound lanes are separated from the westbound lanes by a concrete divider.

Plaintiff entered St. Charles Rock Road at Lindhurst Avenue, which is approximately one block east of the described intersection. She drove westwardly on St. Charles Rock Road at a speed of 10 or 15 miles per hour and immediately upon entering said road proceeded into the extreme inside lane or left turn lane. This lane was described by the witnesses as being the lane next to and immediately north of the concrete divider. This lane, as we have stated, was for traffic whose drivers desired to turn left and go south on Hanley Road.

Plaintiff testified that the left turn lane she was in extended eastwardly from the Hanley Road intersection about one block. She said other cars preceded her car in this lane and that she stopped her car because traffic ahead of her in the same lane came to a halt. She thought she stopped about 50 feet east of the electric signal. She said the signal controlling traffic in this lane was red at that time.

Plaintiff further testified that her car was the third or fourth car back of the traffic signal when she came to a stop. The signal permitting a left turn to go south on Hanley Road was a green arrow. When the signal changed from red to a green arrow the cars ahead of plaintiff proceeded to make their left turns. Plaintiff said she followed these cars and that she was driving approximately a car's length behind the car ahead of her. She said that as she approached the traffic signal, and when she was ready to make her left turn, she glanced up at the signal and saw that the green arrow was still showing and thereafter she just gradually made a left turn. She further testified that as she started into her left turn she did not see the signal again. While plaintiff was making her left turn across the inside lane for eastbound traffic her car was struck by the car driven by defendant. She stated that she was traveling at approximately five miles an hour when making her left turn. She said that as she approached the electric signal, she could "see back past the stoplight" and there were no cars moving eastwardly at that time. When she was asked how far west of Hanley Road she could see that no cars were moving eastwardly, she testified, "around fifty feet." She did not see defendant's car until shortly before it collided with her car. She said at the time of the collision defendant's car was in the eastbound lane next to the concrete divider.

Plaintiff in her case in chief introduced in evidence parts of a deposition previously given by defendant. A part of the deposition introduced in evidence by plaintiff was the following question and answer:

> "Q. Very well. Now did you see the Dennison car—where was the Dennison car the next time you saw it after you saw it enter the left turn lane down at the east end? A. Right before I hit her."

In his deposition defendant stated that plaintiff was making a left turn to go south on Hanley Road when he saw her for the second time. At that time he said he was in the "inside lane for eastbound traffic." In his deposition he further stated that he was about 15 feet west of Hanley Road when he saw plaintiff's car in its left turn. However, he did not see her start to make the left turn. At the time he saw plaintiff in the process of making her left turn he was traveling between 15 and 20 miles per hour. He said that at no time prior to the collision did he apply his brakes and going at a speed of 20 miles an hour he could have stopped his car in 30 feet. He also testified that 30 feet was the approximate stopping distance of his car when traveling at a speed of 15 miles an hour. He further stated in his deposition that prior to the collision he did not swerve in either direction and at the time of the impact he was traveling between 15 and 20 miles an hour.

Defendant testified in his case that he was driving east on St. Charles Rock Road and as he approached Hanley Road the electric signal light changed from green to caution and then to red. He stopped his car at the intersection in the second lane from the curb, which would be the inside lane for eastbound traffic. He said that while he was stopped he saw plaintiff's automobile enter the left turn lane for westbound traffic going south on Hanley Road. He stated she entered the left turn lane a good block east of the Hanley Road intersection.

At one point in his testimony he said plaintiff was 5 or 6 car lengths back from the point where Hanley Road intersects St. Charles Rock Road. He further testified that while he was waiting in a stopped posi-

tion he saw no cars preceding the plaintiff's car make a left turn to go south on Hanley Road. He did not see plaintiff's automobile again until he was 10 or 15 feet from the point of impact, at which time he testified he was going 15 to 20 miles per hour. He said at that time plaintiff was in the process of making her left turn. He did not see her begin to make the left turn. In his cross examination he admitted there was nothing to obstruct his vision. Defendant further testified that when the light turned green for eastbound traffic he proceeded eastwardly in the inside lane and that when he was 10 or 15 feet back or west of the point of impact he saw plaintiff "making a left turn on to Hanley Road," at which time the front end of plaintiff's car was in the lane traveled by defendant. He said the right front fender and bumper of his car struck plaintiff's right front door. He estimated the distance from the point where he was stopped, waiting for the signal to turn green, to the point of impact, at approximately 80 feet.

A witness who testified in behalf of defendant said he was driving his car eastwardly on St. Charles Rock Road and came to a stop at the electric signal at St. Charles Rock Road and Hanley Road. He was driving in the lane next to the curb and stopped his car about three cars back from the first car that was stopped in his lane. He testified that when the light turned green defendant and all of the other cars started to move up. He saw defendant's car collide with plaintiff's car and when asked when he first saw plaintiff's automobile he said, "it seemed like she just came from nowhere." He said that when defendant left the stop sign he proceeded east and remained in the same lane and that the impact took place in the lane in which the defendant was traveling. This witness saw three or four other cars making a left turn to go south on Hanley Road before plaintiff made her left turn.

The aforesaid brief summary of the facts demonstrates an evidentiary basis for Instruction No. 4 given at the request of plaintiff, the giving of which defendant contends was prejudicial error. Said instruction reads as follows:

"In connection with the counterclaim of defendant you are instructed that if you find from the evidence that on the occasion in question plaintiff was operating her automobile on St. Charles Rock Road and turning the same across the eastbound section of said road at a speed of approximately five miles per hour and if you further find that William Besselman was operating his car east on St. Charles Rock Road towards the intersection with Hanley Road where Opal Dennison was turning left, if you find that she was, and if you find that Besselman saw or in the exercise of the highest degree of care should have seen the automobile of plaintiff making a left turn across the eastbound portion of St. Charles Rock Road and could thereafter have avoided the collision shown in evidence by stopping his car, and if you find that Besselman failed so to do, and that such failure, if any, was negligence, then you are instructed that William Besselman cannot recover against plaintiff on the claim of Besselman and your verdict should be in favor of plaintiff Opal Dennison on the counterclaim of defendant William Besselman, and this is true even though you find from the evidence that plaintiff was also negligent."

Defendant contends that said instruction imposes an absolute duty on him to stop his automobile if he saw or could have seen plaintiff making a left turn. He contends that the instruction should have required him to stop his car if in the exercise of the highest degree of care he could have done so. Defendant classifies this instruction as a converse instruction and states that it is basically a reiteration of plaintiff's verdict directing humanitarian instruction on her claim for damages.

Plaintiff submitted her claim under the humanitarian doctrine and required a finding that defendant could, in the exercise of the highest degree of care, have stopped his vehicle in time to have averted the collision after he saw or should have seen plaintiff in a position of imminent peril of being struck and collided with by defendant's car. Defendant complains that no such refinement, namely, "in the exercise of the highest degree of care," is placed on his duty under instruction No. 4 and said instruction imposed on him the absolute duty of stopping his motor vehicle and thereby avoiding the collision.

Defendant is in error when he refers to this instruction as a converse instruction. Said instruction is clearly given in connection with the counterclaim of defendant and is a contributory negligence instruction which seeks to bar recovery under the primary negligence submitted by defendant in his Instruction A for recovery under his counter-claim.

We have carefully read and studied the cases submitted by defendant wherein he contends the court held this instruction prejudicially erroneous. In practically all of the cases the instruction under review imposed the absolute duty to keep a lookout and to know what defendant could have known by such lookout. The duty to keep a lookout was not limited to the exercise of the highest degree of care. The instant instruction is not guilty of such an omission. We find nothing in any of the cases cited by defendant that would be authority for holding that the instant instruction imposed on defendant the absolute duty of stopping his motor vehicle. We think the duty of defendant to have avoided the collision by stopping his car was modified by the term as used in the instruction "in the exercise of the highest degree of care" and therefore does not impose an absolute duty on defendant to stop his car.

Contrary to defendant's contention, we find the wording in an instruction given in the case of Anderson v. Bell, Mo., 303 S.W.2d 93, similar to the wording in the instruction under review in the instant case. In that case the jury was told:

> "* * * if you find that defendant Bell, in the exercise of the highest degree of care could have seen the automobile in which plaintiff was a passenger being driven southwardly on Broadway, and could have known that there was a probable danger of collision between the two automobiles, in time thereafter, under the circumstances then and there existing, to have avoided the collision and injury to plaintiff, if any, by sounding an effective warning of the approach, proximity and movement of defendant Bell's automobile, and by swerving the same to the right, but that defendant Bell failed so to do, if you so find, * * *." (303 S.W.2d l. c. 97.)

The wording in that instruction is similar, as we have said, to the wording in the instant instruction. The contention was made that the instruction failed to furnish a guide to the jury or a standard upon which to base Bell's duty to act. The Supreme Court held that contrary to defendant's contention a standard of care, the highest degree of care, was required as a yardstick by which the jury was to charge defendant's actions. The court said that "the instruction required the jury to find that defendant, in the exercise of the highest degree of care, 'could have known that there was probable danger of collision between the two automobiles, in time thereafter,' etc." (303 S.W.2d l. c. 98.) The language of the opinion in the case of Anderson v. Bell, supra, clearly refutes defendant's contention that the instant instruction imposed an absolute duty on defendant to stop his car if he could have done so. As was said in the Anderson case, the instruction required the jury to find that defendant in the exercise of the highest degree of care could have known that there was a probability of a collision in time thereafter to do things called for in said instruction.

A somewhat similar instruction to that under review was reviewed in the case of Thurman v. St. Louis Public Service Company, Mo., 308 S.W.2d 680. While the precise point raised here was not raised or discussed in that case, the Supreme Court did hold that it was convinced the instruction did not mislead the jury.

Defendant has also attacked Instruction No. 4 on the ground that when read in connection with plaintiff's instruction No. 2 it served to confuse the jury. Defendant's counsel in his oral argument before us stressed this point. We have shown that plaintiff submitted her case in Instruction No. 2 on the humanitarian negligence charge that defendant failed to stop his automobile. The pertinent part of that instruction reads as follows:

> "* * * and if you further find that defendant saw or by the exercise of the highest degree of care could have seen plaintiff in such position of imminent peril, if so, in time thereafter, *by the exercise of the highest degree of care, with the means and appliances then at hand, and with safety to himself, his vehicle and other persons and vehicles thereabout* to have stopped his automobile * * *." (Emphasis supplied.)

It is the italicized portion of the instruction that defendant says tends to confuse the jury and serves to create two standards of conduct.

Initially we should again point out that Instruction No. 4 had no reference to or connection with plaintiff's Instruction No. 2. Instruction No. 4 clearly informed the jury that if it found defendant guilty of the negligence charged in said instruction, then defendant could not recover from plaintiff on defendant's counterclaim. We are convinced that the jury must have followed the clear mandate of the instruction and considered it only in connection with defendant's right to recover on his counter-claim.

We do not agree with defendant that when instructions 2 and 4 are read together they serve to create two standards of conduct. As we said earlier in this opinion, the language in instruction No. 4 did not impose an absolute duty on defendant to stop his car and we think that the standard imposed is the same in both instructions.

Defendant also points out that Instruction No. 2 required defendant to stop under the circumstances related in said instruction if he could have done so "with the means and appliances then at hand, and with safety to himself, his vehicle and other persons and vehicles thereabout." Defendant complains that no such limitation was placed on his obligation to stop as called for in Instruction No. 4, and for this reason he contends there is confusion and conflict between the two instructions.

Whether or not defendant could have stopped his car with safety to himself, his vehicle and other persons and other vehicles thereabout was not a contested issue in the case. There is nothing in the evidence to show that defendant would have endangered the safety of himself and others and his vehicle and other vehicles thereabout if he stopped. The only evidence on this point is that he saw plaintiff enter the left turn lane approximately one block from where he was stopped. He did not see her again until she was 10 or 15 feet from the point of impact. He admitted there was nothing to obstruct his vision and that the distance from the point where he was stopped to the point of impact was 80 feet and that he could stop his car, at the speed at which he was traveling, within a distance of 30 feet.

The instruction under review did not require a finding of failure to swerve. As we have said, there is nothing in the evidence to show that by stopping he would have endangered his life and the lives of other persons and his vehicle and other vehicles thereabout. We merely point this out to show that it was not a contested issue and its omission from Instruction No. 4 did not constitute prejudicial error. It has been held in the following cases that the omission of these specifications from the

plaintiff's instruction did not constitute prejudicial error. McCarthy v. Sheridan, 336 Mo. 1201, 83 S.W.2d 907; Dodson v. Gate City Oil Co., 338 Mo. 183, 88 S.W.2d 866.

For a case where the Supreme Court held it was error to omit one of the specifications because there was evidence tending to show the collision could not have been averted without injury to others, see Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9.

An answer to defendant's contention that the two instructions when read together served to confuse the jury can be found in the case of Welch v. McNeely, Mo., 269 S.W.2d 871. In that case plaintiff submitted his cause to the jury on the sole ground of alleged humanitarian negligence in failing to stop. Plaintiff used the usual language contained in such instructions, that "defendant 'saw, or by the exercise of the highest degree of care on his part could have seen, plaintiff's automobile * * * in a position of imminent peril * * * *in time thereafter* with the means and appliances at hand, and with reasonable safety to his automobile and the occupants thereof *to have stopped* his automobile, and thus and thereby have avoided the collision.'" (269 S.W.2d l. c. 875). Defendant submitted and had given a converse instruction in which the jury was told that "if you believe and find that at the time plaintiff's automobile entered a position of imminent peril the defendant could not, by the exercise of the highest degree of care, have prevented the collision by stopping his automobile, then, and in such event, plaintiff is not entitled to recover * * *." (269 S.W.2d l. c. 875.)

While the precise complaint made by defendant in the instant case was not asserted in the Welch v. McNeely case, the court did say in determining whether the jury could have been misled or confused by said instruction that "this is not a case in which the criticized instruction positively or affirmatively misdirected the jury, or in which there was any conflict between the criticized instruction and others given. * * * [A]ll of the instructions being read together and considered as a whole, the jury could not have been misled or confused by Instruction 3 and plaintiff could not have been prejudiced by the giving thereof." (269 S.W.2d l. c. 878.) While in the aforesaid case defendant's instruction was a converse instruction and in the instant case a contributory negligence instruction, when all of the instructions are read together, the instructions in both cases present to the jury a similar word picture.

We are convinced after reading the record and all of the instructions that both plaintiff and defendant were accorded a fair trial and no error was committed that affected the merits of the action of either party.

The judgment is affirmed.

FRANK W. HAYES and RAY E. WATSON, Special Judges, concur.