John PETTUS, Plaintiff-Respondent,

v.

Morris DUBMAN, Defendant-Appellant.

No. 31902.

St. Louis Court of Appeals.

Missouri.

March 16, 1965.

Motion for Rehearing or to Transfer to Supreme Court Denied April 12, 1965.

Roberts & Roberts, Raymond R. Roberts, Farmington, for defendant-appellant.

Earl R. Blackwell, Hillsboro, for plaintiff-respondent.

DOERNER, Commissioner.

In this action to recover for personal injuries and property damage plaintiff obtained a verdict and judgment for $8300, and defendant appealed.

The collision which gave rise to the litigation occurred about 1:00 P.M. on May 18, 1960, at the intersection of U. S. Highway 67 and State Highway JJ in Jefferson County. At that point Highway 67 is a two lane road 24 feet wide, running north and south; and Highway JJ, of two somewhat narrower lanes, runs east and west. The day was sunny and bright. Plaintiff, on his way to a funeral, was driving his pick-up truck eastwardly on Highway JJ, and was crossing Highway 67 when the collision occurred. Defendant, also driving a pick-up truck, was traveling northwardly on Highway 67 on his way to St. Louis.

Plaintiff submitted his case by Instruction No. P–1 upon conjunctive specifications of humanitarian negligence as between failure to warn on the one hand and failure to stop, slow or swerve on the other. Defendant's initial point is that the court erred in overruling his motion for a directed verdict because as a matter of law plaintiff failed to make a submissible case under any theory. Defendant does not specify whether he means the motion he filed at the close of plaintiff's evidence or the one filed at the close of all the evidence, but since defendant waived the former by introducing evidence after the close of plaintiff's evidence, Appelhans v. Goldman, Mo., 349 S.W.2d 204, we will assume he refers to the latter. Our review, therefore, is limited to the issue of whether there was sufficient evidence to justify a submission on either of the conjunctive submissions. For if plaintiff made a case under either theory then defendant's motion for a directed verdict at the close of all the evidence was properly denied. Nelson v. Wabash R. Co., 300 S.W.2d 407; De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628; Holmes v. McNeil, 356 Mo. 763, 203 S.W.2d 665; Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91. In our determination of that question plaintiff is entitled to the benefit of all the favorable probative evidence in the case and all of the reasonable inferences to be drawn therefrom, including defendant's evidence which aids plaintiff's case and is not contrary to plaintiff's own testimony or his

fundamental theory of recovery. Appelhans v. Goldman, supra; Price v. Nicholson, Mo., 340 S.W.2d 1.

We consider first defendant's alleged negligence in failing to warn. Plaintiff testified that in obedience to a stop sign which controlled eastbound traffic on Highway JJ he came to a stop approximately 8 feet west of the west edge of the pavement of Highway 67. He looked to his left and saw two cars traveling southwardly, which were about 1000 feet away. He then looked to his right, or southwardly. Because of a hill located on the southwest corner of the intersection his view to the south was limited to what he estimated was about 300 feet. He saw no vehicles approaching from the south, and started to slowly cross the intersection at a speed of 3 to 5 miles an hour. His speed was about 3 miles an hour when his front wheels reached a point 6 feet into the southbound lane of Highway 67, and about 4 or 5 miles an hour when they reached the east side of the pavement. At that point his truck was struck on its right side by the defendant's vehicle. Plaintiff testified that after starting up from the stop he looked straight ahead and never looked to his left or right. He stated that no horn was sounded at any time as he crossed Highway 67 and that he had both windows down. He also estimated that at a speed of 3 miles an hour he could have brought his truck to a stop in 4 feet.

Defendant testified that he saw plaintiff's truck before it reached the west edge of the pavement of Highway 67, and saw that it was proceeding slowly across the intersection. He saw plaintiff's head and face as plaintiff was crossing Highway 67 and admitted that plaintiff never looked towards him as plaintiff proceeded across the entire width of the intersection. Asked by his counsel whether he had sounded his horn, defendant answered, "I don't remember, I didn't have any time, it was a short time."

█ Defendant contends that plaintiff failed to prove that defendant's truck had a horn or that it was in working condition. As we pointed out regarding a similar argument in Hook v. St. Louis Public Service Co., Mo.App., 296 S.W.2d 123, 127: "* * * Facts consistent with legality are presumed to exist, so we may indulge the defendants with the presumption that the bus had both brakes and horn. 31 C. J.S., Evidence, § 134, p. 771; Missouri Power & Light Co. v. Creed, Mo.App., 32 S.W.2d 783; Allen v. Kessler, Mo., 64 S.W.2d 630."

█ It is next argued that since the normal reaction time is ¾ths of a second, in which period plaintiff's truck at 3 miles an hour would have traveled 3.3 feet, plaintiff's testimony that he could have stopped in 4 feet "is impossible and cannot be accepted * * *." Of course, the stopping distance given by plaintiff was only an estimate. However, while we do not have judicial knowledge as to the exact distance within which a motor vehicle can be stopped, under given circumstances we do take judicial notice of limits within which an automobile traveling at a stated rate of speed can be stopped. Perry v. Dever, Mo., 303 S.W.2d 1; Peterson v. Tiona, Mo., 292 S.W.2d 581; Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9. Our appellate courts have taken judicial notice of the fact that an automobile with good brakes "* * * could be stopped almost instantly—within a matter of a very few feet * * *" when traveling at 2½ miles an hour, Wegener v. St. Louis County Transit Co., Mo., 357 S.W.2d 943, 947; or even at 5 miles an hour, Hamell v. St. Louis Public Service Co., Mo.App., 268 S.W.2d 60. Defendant conceded that he saw plaintiff's truck *before* it reached the west edge of the pavement of Highway 67, and that plaintiff looked straight ahead, never towards him. Plaintiff's observed obliviousness widened the zone of peril, imposing upon defendant the duty to act in avoidance when he saw plaintiff approaching the path of defendant's vehicle oblivious of the danger and intent upon continuing into its path. The precise point

during plaintiff's run at which plaintiff came into a position of imminent peril is not for this court to say. Under the evidence the jury reasonably could have found that the defendant knew the plaintiff was oblivious of the danger and intent on continuing into the path of the defendant's truck at or before plaintiff started across the southbound lane of Highway 67. Wegener v. St. Louis County Transit Co., supra. We take judicial notice that at a speed of 3 miles an hour, allowing for reaction time, plaintiff if warned at that point could have stopped his truck within 12 feet. We hold that plaintiff made a submissible case of failure to warn under the humanitarian doctrine, and the court did not err in overruling defendant's motion for a directed verdict filed at the close of all the evidence. It therefore becomes unnecessary to consider the other submission.

■ Plaintiff complains that that part of Instruction No. P–1 relating to defendant's duty to warn was erroneous in that it did not require the jury to find, by the usual phrase, " * * * 'with the means and appliances at hand,'" that defendant's truck was equipped with a horn which defendant could have sounded. Whether or not defendant's truck had a horn was not a contested issue in the case, and it was not necessary to require the jury to find that it was so equipped. Dennison v. Besselman, Mo.App., 362 S.W.2d 86; Arky v. Kessels, Mo.App., 262 S.W.2d 357. After all, it was defendant's own counsel who asked his client whether he had sounded his horn, thereby assuming that the truck was so equipped; and the defendant's response was not a denial that he lacked such a warning device, but a claim that the time was too short in which to sound it.

Plaintiff's third assignment is that the court erred in permitting the jury "to consider evidence of injuries in this case which were unrelated to this accident and to plaintiff * * *." This complaint refers to plaintiff's exhibits 1 and 2, which were X-rays, and to the testimony of Dr. J. L.

Foster, plaintiff's medical witness. By way of background it should be stated that plaintiff testified that he was taken from the scene of the accident to the Bonne Terre Hospital, where he was treated by Dr. Foster. By agreement, plaintiff's counsel read into evidence various excerpts from a photostatic copy of the hospital records, including the information that John Pettus was admitted on May 18, 1960 (the day of the accident) at 2:30 P.M.; that the admitting physician was Dr. J. L. Foster; that the patient was in shock and " * * * entered the hospital following a car accident shortly before admission * * *"; that X-rays were taken; and that they " * * * revealed fracture of the right transverse process L5 without much displacement. Also fractures of the inferior/superior rami of the right pubis." Following the reading of the hospital records plaintiff called Dr. Foster to the stand, and after qualifying him, counsel asked, "Doctor, have you had occasion to see Mr. John Pettus on March the 18th, 1960?" to which the Doctor responded: "Yes sir." The witness testified that he saw the plaintiff at the Bonne Terre Hospital, and that plaintiff told him he had been in a car accident. He was asked for his diagnosis of plaintiff's condition, received assurance that he could use his own photostatic copy of the hospital records to refresh his memory, and then testified that when plaintiff entered the hospital plaintiff was suffering from nervous shock due to the injury; and that plaintiff had a fractured transverse process of the 5th lumbar vertebra and a fracture of the inferior-superior portion of the right pubic bone. Counsel then handed the doctor plaintiff's exhibit No. 1 and asked him what it was. The doctor answered tht it was an X-ray of the pelvis and backbone, and proceeded to point out the 5th lumbar vertebra and the crack in it; as well as the two cracks in the pubic bone. The doctor was handed plaintiff's exhibit No. 2, asked whether it showed substantially the same thing, and replied that that view also showed the crack in the

transverse process of the 5th lumbar vertebra. During the remainder of his direct examination the doctor testified to certain complications which developed during plaintiff's stay in the hospital and the treatment given him. Counsel for defendant then cross-examined briefly, followed by a short redirect and recross examination.

After the doctor had left the stand and had been excused counsel for defendant, out of the hearing of the jury, moved that the jury be instructed to completely disregard the two X-rays for the reason that the testimony of the doctor showed that he first saw plaintiff on March 18, 1960, and that there was no showing that the two X-rays were X-rays of Mr. Pettus, the plaintiff. During the colloquy which ensued plaintiff's counsel insisted that the X-rays were part of the hospital records and that he had asked the doctor whether X-rays had been taken on May 18th, and what they showed. Defendant's counsel did not deny that the X-rays were part of the hospital records; his reply was, "You said March, I wrote it down at the time and that's what you said." The court ruled that the exhibits would be admitted. Defendant's counsel then moved, "* * *

that the testimony of Dr. Foster be stricken from the record and the jury instructed to disreagard (sic) it, I'm referring to the fractures of the transverse process and pubic bone because there is no showing either one are related or contributed to by the accident." The motion was overruled.

■ The record shows that in propounding the question to Dr. Foster plaintiff's counsel did use the date of March 18 instead of May 18, the day of the accident. But we think it is clear from the record that the reference to the former date was a mere inadvertence. Both plaintiff and defendant testified that the collision occurred on May 18. Plaintiff testified that he was immediately thereafter taken to the hospital. The hospital record, read into evidence by agreement, revealed that plaintiff was admitted on May 18. They further showed that X-rays were taken upon his admission, and the injuries revealed thereby. The X-rays used by the doctor to point out the plaintiff's injuries which they revealed, and which corresponded with the hospital records, included the printed and handwritten legend which was an integral part of the X-ray film:

```
"NAME        Pettus, John (N)
NO.          601328              DATE:   5-18-60
ADR.         Bonne Terre, Mo.    AGE:    78
        BONNE TERRE HOSP., BONNE TERRE, MO."
```

Under these circumstances we think it must have been apparent to everyone at the time (including defendant's counsel who raised no point of materiality), that the reference to March 18 was a mere slip of the tongue, and that the X-rays were those taken following the accident. The court did not err in admitting the X-rays into evidence. Nor did the court err in overruling defendant's motion to strike Dr. Foster's testimony. If plaintiff's evidence was insufficient in the respect claimed by defendant's counsel (an issue not assigned on appeal,

which we need not decide) the proper way to raise the point was not by a motion to strike all of the doctor's testimony, all of which was competent and material.

■ Lastly, defendant complains the court erred in giving Instruction No. P–2 because it permitted the jury, in determining the damages to be awarded plaintiff, to take into consideration future pain and suffering when, defendant asserts, there was no evidence that plaintiff would suffer pain in the future. At the trial plaintiff testi-

**378**

fied that he was still having pain in his hip and pelvis, and that his hearing and eyesight still bothered him as a result of the accident. The trial was held more than three and a half years subsequent to the date of the collision. Such evidence has been held sufficient to justify the giving of an instruction on future pain and suffering. Palmer v. Lasswell, Mo.App., 267 S.W.2d 492; Kenney v. J. A. Folger Co., Mo.App., 192 S.W.2d 73; Hutchison v. Moerschel Products Co., 234 Mo.App. 518, 133 S.W.2d 701. It will be noted that no claim of permanency was made or submitted.

For the reasons stated, the judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is affirmed.

WOLFE, P. J., RUDDY, J., and ROY W. McGHEE, Special Judge, concur.